# 𝔚heeling.

## WASHINGTON v. THE B. & O. R. R. Co.

### Decided November 20, 1880.

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

1. Negligence is the doing of something, which under the circumstances a reasonable person would not do, or the omission to do something in discharge of a legal duty, which under the circumstances a reasonable person would do, and which act of commission or omission as a natural consequence directly following produces damages to another.

2. Negligence is generally a mixed question of law and fact; but what particular facts or conduct constitute or amount to negligence is generally a question of fact for the determination of the jury from all the evidence, rather than a question of law for the determination of the court; and the most the court can ordinarily do, when the question of care or negligence depends upon a variety of circumstances, is to define the degree of care and caution required by the law and leave to the practical judgment of the jury the work of comparing the acts and conduct of the parties with the duties required of them under the circumstances. Yet there may be some cases where the question of negligence may be properly one of law for the court, as where the case presents some prominent act, not depending upon surrounding circumstances for its quality, and in regard to the effect and character of which no room is left for ordinary minds to differ. But ordinarily the only efficient control the court can exercise over the jury in their determination of what is negligence is in the power of the court to set aside their verdict, where it is based on a false assumption of what is negligence.

3. The cause of an injury in the contemplation of law is that which *immediately* produces it as its natural consequence; and therefore if a party be guilty of an act of negligence, which would naturally produce an injury to another, but, before such injury actually re sults, a third person does some act, which is the immediate caus

of the injury, such third person is alone responsible therefor, and the original party is in no degree responsible therefor, though the injury could never have occurred but for his negligence. The causal connection between the first act of negligence and the injury is broken by the intervention of the act of a responsible party, which act is in law regarded as the sole cause of the injury according to the maxim "*In jure non remota causa sed proxima spectatur.*"

4. It is a general if not a universal rule, that, if the plaintiff has been guilty of contributory negligence, he cannot recover.

5. By contributory negligence is meant such negligence on the part of the plaintiff as contributes to the injury, that is, *directly* in part causes it.

6. It is therefore not contributory negligence for the plaintiff to be guilty of a negligent act, which might have produced the injury, if, before it actually results, the defendant is guilty of some negligent act, which was the *immediate* cause of the injury, even though no damage could have resulted to the plaintiff, had he not been originally negligent.

7. To bar the plaintiff from recovery, his alleged act of negligence must be such as he could reasonably anticipate would result in his injury.

8. The owner of horses in this State is not chargeable with an unlawful act or with negligence in allowing them to get upon a railroad track, if it be unenclosed. But he by so doing takes the risk of their loss or injury by unavoidable accident. But if killed by the negligence of the servants of the railroad company in running the train, it is responsible.

9. In such a case the servants of the railroad company are bound to use ordinary precaution to *discover* that the horses are on the track, as well as to avoid injuring them after they are seen.

10. In such a case if the plaintiff be present and fail to give any signal to the approaching train or to drive his horses off the track, when he could have done so, the company would still be responsible, if the engineer of the train saw the horses on the track in ample time to avoid injuring them, or could have so seen them in such ample time by the use of ordinary care. The plaintiff under such circumstances could not reasonably anticipate, that the engineer of the company would be guilty of such negligence, and therefore he cannot be considered as contributing to the accident.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Jefferson, rendered on the 28th day of March, 1878, in an action at law, in which Ella B. Washington was plaintiff and The B. & O. R. R. Co. was defendant, allowed upon the petition of said company.

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

Hon. John Blair Hoge, late judge of the third judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

On August 29, 1874, Ella B. Washington instituted in the circuit court of Jefferson county an action on the case against The Baltimore and Ohio Railroad Company claiming $450.00 damages. Her declaration alleged, that on August 15, 1874, she was possessed of three valuable horses in said county, which were then without any fault of the plaintiff on the railway of the defendant, and that the defendant by its servants so carelessly, unlawfully and improperly ran its steam-engine, that by its carelessness and negligence the steam-engine then and there struck and ran over these three horses of the plaintiff and thereby wounded one of said horses and killed the other two. The defendant demurred to this declaration, and the court overruled the demurrer; and the defendant thereupon pleaded not guilty, and issue was joined thereon. This issue was tried by a jury, who rendered a verdict in favor of the plaintiff for $200.00. The defendant moved the court to set aside the verdict and to grant it a new trial, which motion the court overruled; and on March 28, 1878, the court rendered a judgment against the defendant in accordance with this verdict. To this judgment a writ of error and *supersedeas* was awarded by this Court.

It appears by the record, that there was evidence offered by the plaintiff, which proved, that on August 24, 1874, just before an express train going east was due, she was sitting at an upper window of her house, which overlooked the railroad for three fourths of a mile, when she discovered that her two grown horses and a colt had escaped from her yard into her meadow, through which the railroad ran; and at the same time she heard her brother calling a servant and saw her little boy running down the hill trying to get the stock back;—that her

brother, son and servant continued their efforts to drive the horses back; but they ran on down the meadow and came upon the railroad-track just above a cattle-stop between the meadow and the adjoining field below;—that just as the horses got on the railroad track she heard the train approaching at a crossing a distance above of seven hundred and seventy yards;—that it ran at its usual speed, no whistle being blown, nor, as far as she could judge, was any attempt made to apply the brakes;—that the railroad-track where the accident occurred was perfectly straight for five hundred and fifty-two yards, and there was a full view of the track for six hundred and sixty yards above the place, where the horses were killed; that the parties engaged in endeavoring to get the horses off the track and to drive them back into the yard did their best to effect their object but failed; but none of them made any effort to signal the train;—that an alert engineer could have seen these parties endeavoring to get the horses off the track, and that the train could have been stopped in a space of three hundred yards;—that the horses had gotten out of the yard through a gate which some one had left open.

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

The defendant on the contrary introduced evidence to show, that the engineer first saw the horses when the train was within thirty or forty yards of this cattle-stop; that the train was running thirty or thirty-five miles an hour; that as soon as he saw the horses he blew the whistle and threw on the air-brakes; that when the train got within twenty or thirty yards of a certain culvert, the horses ran upon the track and tried to cross on the culvert, when they were struck; that the train was stopped before it had entirely passed over the culvert. The engineer testified, that he was watching the track, and when he first saw the horses, they were eating in the fence corner. The defendant also introduced evidence to prove, that the train could be stopped with the brakes used in eight hundred or one thousand feet running at the speed at which it was running. The whistle was

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

blown, the air-brakes applied, and the train stopped within this distance.

The defendant's counsel moved the court to grant these instructions marked A, B and C, as follows:

### "DEFENDANT'S INSTRUCTION "A."

" The court instructs the jury that if they believe from the evidence that after the discovery by the plaintiff of her horses upon or near the road of defendant, and in a position of danger, she by the use of due diligence on her part and that of her servants could have driven her said horses off from said road and prevented their being killed or injured by defendant, or could by the use of due diligence on her part and that of her servants have warned the defendant of threatened danger by signal or otherwise, and thus have prevented their being killed or injured, and she failed in either respect so to do, then the plaintiff is guilty of contributory negligence, and cannot recover.

### "DEFENDANT'S INSTRUCTION "B."

"The court instructs the jury that there is no law in this State by which railroad companies are required to fence their roads for the protection of other persons' domestic animals ; that domestic animals found upon the tracks of such roads are wrongfully there ; and that when discovered, the first and paramount duty of the engineer is to provide for the safety of passengers and property upon the train, and after that to avoid unnecessary injury to such animals, if it can be done by the exercise of ordinary and reasonable care.

### "DEFENDANT'S INSTRUCTION "C."

"The court instructs the jury that the defendant has the right to regulate the management and speed of their trains solely with reference to the security of persons and property in their charge, and may make their plans upon the reasonable and legal presumption that the owners of domestic animals will keep them at home, and not

suffer them to stray upon the track of a railway, unless they are prepared to incur the legitimate hazards of such an exposure."

But the court declined to grant instructions "B" and "C," and declined to grant instruction "A" as prayed, but appended to said instruction "A" the following modification :

"Unless they further find that after the cattle were discovered, or ought to have been discovered by the defendant by the use of ordinary diligence, the defendant failed to use ordinary precaution to avoid their injury."

To which action of the court in refusing to grant his instructions "B" and "C," and in refusing to grant his instruction "A" as prayed, and in appending thereto the modification above recited, the defendant excepted, and prayed that his bill of exceptions might be signed, sealed and enrolled, which was accordingly done.

The defendant obtained from this court a writ of error and *supersedeas* to the judgment of the court in this case.

*Baylor & Wilson*, for plaintiff in error, cited the following authorities :

11 W. Va. 16 ; 9 W. Va. 252 ; 13 Ind. 213 ; 42 N. H. 215 ; 5 Otto 439 ; 21 Barb. 339 ; 29 N. H. 9 ; 120 Mass. 257 ; 101 Mass. 454 ; 121 Mass. 10 ; 22 American Rep. 714 ; 24 Md. 103 ; 17 American Rep. 521 ; *Id.* 568 ; Va. Law Journal 1879, 51 ; 23 Conn. 437 ; 18 Ind. 215 ; 25 Ind. 186 ; 31 Mo. 379 ; *Id.* 412 ; 106 Mass. 149 ; 17 Gratt. 173 ; 32 Gratt. 792 ; 31 Gratt. 201 ; 9 W. Va. 270.

*David B. Lucas*, for defendant in error, cited

9 W. Va. 252 ; *Id.* 270.

GREEN, PRESIDENT, announced the opinion of the Court :

This record imposes on the court the duty of determining what is negligence, and when the court should

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

instruct the jury what acts of commission or omission as a question of law amount to negligence, and when it should confine itself to instructing the jury generally what constitutes negligence generally, and then leave it to the jury to determine, whether the evidence taken altogether proves negligence, without attempting to influence the jury by saying that certain acts would or would not amount to negligence; and also to determine, what character of conduct on the part of the plaintiff amounts to such contributory negligence, as precludes him from recovering.

Syllabus 1.     Negligence is the doing of something, which under the circumstances a reasonable person would not do, or the omission to do something in discharge of a legal duty, which under the circumstances a reasonable person would do, and which act of commission or omission as a natural consequence directly following produces damage to another. Negligence can be based on omissions, only when there is a legal obligation on the party to do the omitted acts. If such legal obligation exists, negligence may arise either from the non-performance or mal-performance of the duty imposed by law. Of course negligence cannot be attributed to an irresponsible person, as an idiot or small child; and even when the party is responsible, the circumstances, in which he is placed, must be considered in determining whether he be negligent. If the circumstances are such as naturally cause him great excitement, the law does not require him to exhibit the coolness and to exercise the sound judgment, which would be required of him under other circumstances. *Stokes* v. *Saltonstall*, 13 Pet. 181 ; *Johnson* v. *Westchester & Philadelphia Railroad Co.*, 70 Pa. St., 358.

Syllabus 3.     The act or omission, which constitues negligence, must be such as *directly* produces as its natural consequence an injury to another. And therefore if a party do an act, which might naturally produce an injury to another as its consequence, but, before any such injury results, a third person does some act or omits to perform some act,

which it was his duty to perform, and this act or omission of such third person is the immediate cause of an injury, which would not have occurred but for his negligence, such third person is responsible for such injury and not the party guilty of the first negligence; for the causal connection between the first act of negligence and the injury is broken by the interposition of the act or omission of the third party. And this act or omission of the third party is in law regarded as the cause of the injury, and the act of the first party is in law regarded as a mere condition, according to the maxim: " *In jure non remota causa sed proxima spectatur.*"

As a case illustrating the meaning and scope of this maxim, we may refer to the case of *Insurance Co.* v. *Tweed,* 7 Wall. 52, Justice Miller in delivering the opinion of the court says: "One of the most valuable criteria furnished us by these authorities ·is to ascertain, whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

If between the accomplished fact and the alleged cause there has intervened the negligent act of a responsible third party sufficient to produce the misfortune, it must, it would seem clear on principle, be regarded as the cause of the misfortune, and the original negligence must be regarded as too remote to be considered as the cause. Many cases may be found, which are based on the law as we have laid it down. Thus where a butcher bought sheep of a farmer, which were fraudulently represented as sound, he cannot recover of such farmer, as special damages, such damage as has resulted to him from his customers refusing to deal with him because he was reported to have bought these diseased sheep, the court regarding this loss as caused not by the sale to the butcher of the diseased sheep by the farmer, but as resulting from the interposed action of the customers in refusing to deal with the butcher. See *Crain* v. *Petrie,* 6 Hill 522.

In *Carter* v. *Towne et al.*, 98 Mass. 567, "a minor but eight years old sued a druggist for selling him two pounds of gunpowder carelessly, he being on account of his age unfit to be entrusted with it, and that in his ignorance of its use he exploded it and was burned. The court decided that the minor could sustain such action, but on the trial of the case it was proven, that with the knowledge of his parents this powder had been kept in their house a week, that his mother had given the boy some of the powder and he fired it off, and some days afterwards he took more of the powder with his mother's knowledge and fired it off and was injured thereby. The court held, that though the druggist was negligent in selling the powder to so young a child, yet in law this was not the cause of his injury, there having been interposed between the sale and the accident a cause sufficient to have produced it, the negligence of his mother.

In *Vicars* v. *Wilcocks*, 8 East: 1, it was held, that special damages could not be recovered in an action of slander for the loss resulting from the wrongful discharge of the plaintiff by his master before the end of his term because of such slander. The loss was held not to have been caused by the slander, but by the wrongful act of the master subsequently in discharging the plaintiff before the end of his term.

If instead of a third person intervening by some negligent act between the alleged cause of the injury and the injury itself, the plaintiff himself should intervene and be guilty of negligence, thereby causing the injury to himself, the defendant, though he had originally been guilty of negligence which might naturally have produced an injury, cannot be held responsible for such injury, because the defendant's negligence in such case must be regarded as the remote and not the proximate cause of the injury. In such a case, in the language of the law-books, the plaintiff is held to have contributed to the injury; but he would more properly be said to have caused the injury to himself in such a case, as the

defendant's negligence being the remote cause is not regarded at all, and is no part of the cause of the injury. Properly speaking, contributory negligence, as the very words import, arises when the plaintiff as well as the defendant has done some act negligently, or has omitted through negligence to do some act, which it was their respective duty to do, and the combined negligence of the two parties has directly produced the injury, as, for example, when a person is negligently driving an omnibus in a street at a furious and unlawful speed, a person on the sidewalk seeing the omnibus thus driven carelessly tries to cross the street in front of the omnibus and is run over, he cannot recover for the injury he sustains, as he has been in such case guilty of contributory negligence. See *Woolf* v. *Beard*, 8 Car. & P. 373 (34 Eng. C. L. R. 435.)

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

Syllabus 5.

On the contrary, if the act of the defendant is the immediate cause of the injury, no preceding negligence or improper conduct of the plaintiff would prevent him from recovering; for in such a case his preceding negligence or improper conduct would not be in law regarded as any part of the cause of the injury, and would not therefore be held to be contributory negligence. The plaintiff's preceding negligence or improper conduct is in such case a mere condition and not a cause of the injury. Though it may be in such a case, that the injury could not possibly have happened without this preceding negligence or improper conduct of the plaintiff, that is, without circumstances being in the actual condition in which the plaintiff had improperly placed them. He may in such case nevertheless recover; for in the view of the law, which never looks to the remote cause, which we have called a condition, but only the proximate cause, the injury in such a case would be held to be caused by the defendant only. There are very many decided cases which sustain and illustrate these views, a few of which I will cite.

Syllabus 6.

In *Cuff, &c.* v. *Newark & New York Railroad Co.*, 35

N. J. 32. Depue, Judge, says : "In other cases the intervention of the independent act of a third person between the wrong complained of and the injury sustained, which was the immediate cause of the injury, is made a test of that remoteness of damage which forbids a recovery. *Ashley* v. *Harrison*, 1 Esp. 48 ; *Mylne* v. *Smith*, 2 Dow's Parl. Rep. 390 ; *Fitsimons* v. *Inglis*, 5 Taunton 534; *Hoey* v. *Felton*, 11 C. B. (N. S.) 142; *Daniels* v. *Portler*, 4 C. & P. 262 ; *Hadden* v. *Lott*, 15 C. B. 411 ; *Walker* v. *Goe*, 4 H. & N. 350; *Parkins* v. *Scott*, 1 H. & C. 152 ; *Crain* v. *Petrie*, 6 Hill 522 ; *Stevens* v. *Hartwell*, 11 Metc. 542; *Torney* v. *Railway Co.*, 3 C. B. (N. S.) 145 ; *Williams* v. *Jones*, 3 H. & C. 256 ; *Morgan* v. *Atterton*, Law Rep. (1 Exch.) 239 ; *Bank of Ireland* v. *Evans*, 5 H. of L. Cas. 389, 397."

In *Stephens* v. *Hartwell*, 11 Metc. 542, it was decided, that in action for slanderous words the plaintiff cannot prove, that he sustained special damages by means of the repetition by a third person of the words uttered by the defendant.

In *Murphy et ux.* v. *Dean et al.*, 101 Mass. 455, Wells, Judge, says : " The statement in *Tuff* v. *Warman*, 5 C. B. (N. S.) 573 is thus : ' If the defendants might by the exercise of due care on their part have avoided the consequences of the neglect or carelessness of the plaintiff, the plaintiff will not be disentitled to recover.' This as already suggested may be correct as applied to a case like *Tuff* v. *Warman*, where the negligence of the plaintiff was in a certain sense remote, preceding the negligent conduct of the defendant ; but when the negligent conduct of the two parties is contemporaneous, and the result of each relates directly and proximately to the occurrence from which the injury arises, the rule of law is rather that the plaintiff can not recover, if by due care on his part he might have avoided the consequences of the carelessness of the defendant. *Lucas* v. *New Bedford & Taunton Railroad Co.*, 6 Gray 64; *White* v. *The Northwestern Railroad Co.*, 9 El. & Bl. 719 ; *Robinson* v. *Cone*, 22 Vt. 213."

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

In *Greenland* v. *Chaplin*, 5 Exch. Rep. 248, Chief Baron Pollock states the rule, "that when the negligence of the party injured did not in any degree contribute to the *immediate* cause of the accident, such negligence ought not to be set up as an answer to the action."

In *Johnson* v. *The Hudson River Railroad Co.*, 20 N. Y. 69, Judge Denio says : " But if one make an excavation in a highway, which may or may not be the occasion of an accident to a traveler, it would be reasonable to require a party seeking damages for an injury to give general evidence, that he was traveling with moderate care. Thus in *Butterfield* v. *Forrester*, 11 East. 60, the defendant in making some repairs to his house, had put up a pole across the road, leaving however a free passage by a street in the same direction. The plaintiff rode against it and was injured. It being proved he was riding immoderately it was held he could not recover."

So in *Smith* v. *Smith*, 2 Pick. 621, the defendant had piled cord-wood by the side of the highway at the foot of a hill, and one stick projected eight inches into the road. The plaintiff on a dark night drove an overloaded wagon down the hill without any shaft-girth to the harness. The wagon struck the horse, and he ran along side of the wood-pile and against the projecting stick and caused an injury. A verdict for the defendant was sustained by the court on the ground, that the plaintiff's conduct had contributed to the injury.

In *Trow* v. *The Vermont Central Railroad Co.*, these propositions of law are laid down by the court: "When there has been mutual negligence on the part of the plaintiff and defendant, and the negligence of each was the proximate cause of the injury, no action could be sustained. So when the negligence of the plaintiff is proximate, and that of the defendant remote or consisting of some other matter than that which occurred at the time of the injury, no action can be sustained. But when the negligence of the defendant is proximate, and that of the plaintiff remote, the action for the injury can

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.
well be sustained, though the plaintiff was not entirely without fault; so that if there was negligence on the part of the plaintiff, yet if, at the time when the injury was sustained, it might have been avoided by the defendant by the exercise of reasonable care and prudence, an action will lie for the injury."

The last of these propositions is sustained and illustrated by numerous cases, in which it has been held, that if a defendant in the discharge of his duties carefully could avoid injuring a child too young to be responsible for its conduct, no amount of actual preceding negligence on the part of its parents in letting it run at large will be a good defence. *Birge* v. *Gardiner*, 19 Conn. 507; *Robinson* v. *Cone*, 22 Vt. 213; *Boland et ux.* v. *Missouri R. R. Co.*

It is true there are decisions to be found, which are inconsistent with these decisions; but the above cases seem to be sustained by the weight of authority and reason.

Based on the same principles is the case of *Davies* v. *Mann*, 10 M. & W. 549, in which it was held, that though the plaintiff negligently left his donkey in a highway tied by its foot, he could nevertheless recover of a defendant who negligently drove over it. So also it has been held, that it is no defence to a suit for damages in a collision, that the plaintiff was at the time in a place where he ought not to have been. *Greenland* v. *Chaplin*, 5 Exch. Rep. 243. In *Spofford* v. *Harlow*, 8 Allen 176, it was decided that, "the driver of a team, which is on the left side of a street in violation of the law of the road, may nevertheless maintain an action for the injury sustained by him from a collision with another team, the driver of which in meeting him carelessly and recklessly ran into him." So too in *Steel and another* v. *Bardhart*, 104 Mass. 59, it was held, that "if one places his horse and wagon in a street in a city transversely to the course of the street, while loading articles which a city ordinance permits to be loaded only

in vehicles placed lengthwise and as near as possible to the sidewalk, he is not restrained by the mere fact of thus violating the ordinance from maintaining an action against one, who injures the horse by negligently driving another wagon against it, where by exercising more care he might have avoided doing so." So too a party may recover damages for an injury, the direct result of the defendant's negligence, though at the time of the injury the plaintiff was a trespasser, and the injury could not have resulted to him, if he had not been a trespasser, where he does not in any degree directly contribute to the bringing about of such injury. This is well illustrated by what was said in the case of *Isbell* v. *New York and New Hampshire Railroad*, 27 Conn. 404.

It was there said: " A remote fault in one party does not of course dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demand this ; and it is no answer for the neglect to say, that the complainant was first in the wrong, since inattention and accident are to a greater or less extent incident to human affairs. Preventative remedies must always be proportioned to the case in its peculiar circumstances, to the imminency of the danger, the evil to be avoided, and the means at hand of avoiding it. And herein is no novel or strange doctrine of the law ; it is as old as the moral law itself, and is laid down in the earliest books on jurisprudence. A boy enters a door-yard to find his ball or arrow, or to look at a flower in a garden ; he is bitten and lacerated by a vicious bull-dog; still he is a trespasser, and if he had kept away, would have received no hurt. Nevertheless is not the owner of the dog liable ? A person is hunting in the woods of a stranger, or crossing the pasture of his neighbor, and is wounded by a concealed gun, or his dog is killed by some concealed instrument, or himself gored by an enraged bull ; is he in all these cases remediless,

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

because he is there without consent? Or an intoxicated man is lying in the travelled part of a highway, helpless, if not unconscious, must I not use care to avoid him? May I say he has no right to encumber the highway, and .therefore carelessly continue my progress, regardless of consequences? Or if such a man has taken refuge in a field of grass, or a hedge of bushes, may the owner of the field knowing the fact, continue to mow, or fell trees, as if he was not so? Or if the intoxicated man has entered a private lane or by-way and will be run over, if the owner does not stop his team, which is passing through it, must he not stop them? These are instances, I am aware, of personal rights; but what is true in one relation to the person is essentially true in relation to dumb animals and other kinds of property, though perhaps the rule would be applied in the latter case with less strictness. It must be so, that unnecessary injury negligently inflicted in these and kindred cases is wrong, and therefore unlawful."

The principles here stated appear to be sound, though it may be that some of the examples put may not properly apply. Whenever the plaintiff has not *directly* contributed to the accident, if the defendant caused it by his negligence, he is responsible.

It is unnecessary in this case to determine whether the plaintiff might not recover, though by a very slight negligence he has contributed directly to the accident, when the defendant has been guilty of gross negligence. It has been so held in Illinois and Georgia, where "comparative negligence" has been declared to be the test, and not "contributory negligence." See *C. & N. W. R. R. Co.* v. *Sweeney*, 53 Ill. 330; *Galena & Chicago Union Railroad Co.* v. *Jacobs*, 20 Ill. 478; *The Chicago, Burlington & Quincy Railroad Co.* v. *Dewey*, 26 Ill. 255; *Same* v. *Hazzard*, 26 Ill. 373; *Ch. B. & Q. Railroad* v. *Gregory*, 58 Ill. 272.

In other States, where this doctrine of "comparative negligence" is not recognized as law, there are yet cases

decided, which it would be difficult to distinguish in principle from those cases professedly decided on the ground of "comparative negligence." See *Gale* v. *Lisbon*, 52 N. H. 174; *Horton* v. *Ipswich*, 12 Cush. 488; *Mahoney* v. *Metcalf R. R. Co.*, 104 Mass. 73; *Brownson* v. *Southberry*, 37 Conn. 693. But the decisions very generally, in both England and this country, lay down the rule to be, that if the plaintiff has by his negligence in any degree contibuted *directly* to the injury complained of, he cannot recover; though this rule does not appear always to have been followed in practice. See *O'Keefe* v. *Chicago, R. I. &c. R. R.*, 32 Ia. 467.

These principles lead us to the conclusion, that though the plaintiff be negligent in permitting his cattle to be upon a railroad track, yet, if injury to them is caused by the servants of the railroad by running over them, after they were seen on the track of the road, or after they ought to have been seen by the exercise of reasonable care, and which could have been avoided by the exercise of reasonable care, the owner of the cattle may recover against the railroad for the damages inflicted. It is true, that the decisions of the courts on this point have been very conflicting.

In California in the case of *Needham* v. *The San Francisco & St. Jose Railroad*, 37 Cal. 409, it was held: "The reason, why the law does not hold the defendant responsible for damages, when the plaintiff has by his negligence or wrongful act contributed to the result complained of, is not, that the wrong of the plaintiff justifies or excuses the defendant, but because it is impossible to apportion damages between the parties; and wherever that impossibility does not exist, the defendant's exemption from liability does not exist. The rule releasing the defendant from responsibility for damages in cases where the plaintiff by his negligence or wrong contributed to the result, is confined to cases where the act of the plaintiff is the proximate cause of the injury, and proximate cause means negligence at the time of the

injury; and therefore, though the plaintiff is guilty of negligence or even of possible wrong in placing his animals on a railroad track, yet the railroad company is bound to exercise reasonable care and diligence in the use of its road; and if for want of that care the animals are injured, the company is liable."

So in Connecticut in *Isbill* v. *The New York and New Haven Railroad Co.*, 27 Conn. 393, it was held, " that where the plaintiff's oxen were at large in a highway in violation of law and went upon the railroad track and were there injured by the negligent management of the train by the servants of the railroad, the railroad was responsible for the damages, though the cattle were trespassers. See as justifying this conclusion *New Haven Steamboat and Transportation Co.* v. *Vanderbilt*, 16 Conn. 421; *Birge* v. *Gardiner*, 19 Conn. 507; *Daley* v. *The Norwich & Worcester Railroad*, 26 Conn. 591; *Johnson* v. *Patterson*, 14 Conn. 1."

In Illinois where the rule of "comparative negligence" is recognized, it has been decided "in an action against a railroad company to recover the value of cattle alleged to have been killed on the defendants' road by their locomotive and train, where it appeared, that the cattle could have been seen on the track by the engineer, if he had been on the lookout, for a distance of more than a half a mile, there being nothing to obstruct the view, the engineer making no effort to avoid the danger, and never slacking the speed of the train, but rushing on at a rapid rate without any signal to give the alarm, that it was gross negligence on the part of the engineer not to stop the train in time to avoid the danger, for which the company should be held responsible, even though the cattle were upon the tract without the fault of the company." *Chicago & Northwestern Railway Co.* v. *Barrie*, 55 Ill. 226; and in *Toledo, Peoria & Warsaw Railway Co.* v. *Bray*, 57 Ill. 514, it was held, "that where stock was killed upon a railroad-track, and the engineer in charge at the time could by the use of ordinary care and skill

without danger have stopped the train in time to avoid the collision, the company is liable, though the animals were wrongfully on the track." See also *Toledo, Peoria & Warsaw Railway Co.* v. *Ingraham*, 58 Ill. 120, and *Illinois Central Railway* v. *Wren*, 43 Ill. 77.

1880<br>Special Term.<br><br>Washington<br>v.<br>B. & O. R. R.<br>Co.

There have been in Illinois a number of cases, where it has been held, "that stock getting upon a railway are tresspasers, and the company are not liable for injury they may sustain, unless it is occasioned by gross negligence of the railroad's servants." See *Illinois Central Railroad Co.* v. *Reedy*, 17 Ill. 580; *Military Trunk Railroad Co.* v. *Rockafellow*, 17 Ill. 541; *Great Western Railroad Co.* v. *Thompson*, 17 Ill. 131; *Chicago & Mississippi Railroad Co.* v. *Patchin*, 16 Ill. 198; *Heade* v. *Rust*, 39 Ill. 192.

In Iowa in the case of *Parker et al.* v. *The Dubuque Southwestern Railroad Co.*, 34 Ia. 309, it was decided, "that a railroad company is bound to have in charge of its engine men of reasonable skill and judgment, and the engineers thus in charge must exercise such judgment and skill in avoiding injury to cattle on the track, having due regard to the safety of the train and passengers, in order to exonerate the company from liability."

In Kentucky in the case of the *Louisville & Nashville Railroad Co.* v. *Wainscott*, 3 Bush 151, decided in 1867, Judge Robertson delivering the opinion of the court says: " Had the mule been on the track far enough ahead to enable the engineer by proper means to stop the locomotive, before it reached the animal, or to have enabled him to retard the train's progress, until the mule could have been driven out of all danger of collision, it was his duty *to see and save it;* and failing so to do, the appellant would have been responsible for the value of the mule." This seems to be inconsistent with the decision of the court in the *Louisville & Frankfort Railroad Co.* v. *Ballard*, decided in 1859, (see 2 Metc. 177), when the court held, " that the paramount duty of a railroad company through its agents entrusted with the conduct

of a train is to look to the safety of the persons and property thereon, subordinate to which it is their duty to avoid unnecessary injury to animals straying on the road. But there is a peculiar obligation upon their owners to keep them off the road. And if they are found there, whilst railroad companies, their agents and servants are not allowed to omit all care, and wilfully and wantonly injure them by running engines and trains over them, yet said companies are not to be held liable for injuries inflicted under such circumstances, unless it is proved that the conduct of the companies or their agents has been reckless, wanton and wilful." To sustain which position among other cases the older Illinois cases above referred to are cited

In *Earmes* v. *Salem and Lowell Railroad Co.*, 98 Mass. 563, Chapman, J., thus states the law : " But though the sheep were trespassers, this would not authorize the defendants to kill, maim or otherwise injure them wilfully or carelessly. Even in driving off animals trespassing on one's land reasonable care must be taken. And if they get upon the track, where they may expose passing trains and the people upon the trains to great danger, the managers of the trains are still bound to use reasonable care to avoid injuring the animals, and may not carelessly run upon them. But they are not bound to presume, that such animals will be found upon the track; and if they injure or destroy the animals without negligence, they are not liable to the owner." In *Lock* v. *First Division St. Paul and Pacific Railroad Co.*, 15 Minn. 355, referring to this case among others the court held, that " if an engineer of a railroad train saw a cow on its track he would be bound to exercise all reasonable and proper care to avoid injuring it, and if he failed to do so, the company would be responsible, but that he had a right to presume, that there was no cow on the track, and he was therefore not bound, so far at least as his duty to the plaintiff was concerned, to look ahead to see if cattle were on the track, and his failure to do so would

not be such negligence as would render the company responsible to the owner of the cow."

It should be observed, as bearing upon the question, whether it is a duty to the owner of cattle that the engineer should look ahead to see that cattle are not on the track, that in Massachusetts the law required the railroads to fence their tracks; and in Minnesota, at the season of the year when this cow was killed, the law required the owners of cattle to keep them at home enclosed.

The rule laid down in Mississippi in *Mississippi Central Railroad Co.* v. *Miller*, 40 Miss. 48, is : "The railroad company, in order to prevent injury and destruction to stock on their track, are only bound to use such reasonable care and prudence in running, as a prudent man engaged in the same business would use to prevent such injury and destruction." See also *Vicksburg and Jackson Railroad Co.* v. *Patton*, 31 Miss. 156.

In *Raiford* v. *Mississippi Central Railroad Co.*, 43 Miss. 329, the court says : " The plaintiff might well suffer his horses to run at large; but in so doing he took the risk of their loss or injury by unavoidable accident. The fact, that the animals were on the road, did not justify the servants of the company in regarding them as there unlawfully and in violation of the rights of the company, and in any measure release the company's servants from the observance of proper care and precaution." In New York on the contrary it has been held by the Supreme Court, that the owner of domestic animals straying upon the track of a railroad company and injured in a collision with its engines while operated in the ordinary manner has no remedy for the loss against the company, although it might have been avoided by the exercise of ordinary care on its part ; that gross negligence even in the absence of intentional injury will not subject the company to liability. In *Tonawanda Railroad Co.* v. *Manger*, 5 Denio 255 ; *Same Case*, 4 Com. 349 ; *Clarke* v. *Syracuse and Utica Railroad Co.*, 11 Barb.

1880 Special Term.

Washington
v.
B. & O. R. R.
Co.

112; *Talmidge* v. *Rensellaer and Saratoga Railroad Co.*, 13 Barb. 493; *Terrey* v. *The New York Central Railroad Co.*, 22 Barb. 574, 586.

In New Jersey, where the law required the owner of cattle to keep them at home enclosed, it has been held, that if permitted to run at large, nothing but wilfulness on the part of the engineer, or such negligence as would amount to wilfulness, would make the company liable. See *Vandegrift* v. *Rediker*, 2 Zab. 189.

In North Carolina in *Jones* v. *The North Carolina Railroad Co.*, 70 N. C. 626, it was decided, that " where the plaintiff's horse was in his pasture, through which the defendant's road run, and was run over in the daytime, by one of the engines of the defendant, it appearing on the trial that the horse, before being struck, ran some two hundred yards on the track, *and there was nothing to prevent the engineer from seeing him,* and no alarm was given by the engineer until about the time the horse was run over, that this was such negligence on the part of the engineer as would make the defendant liable in damages for the injury to the horse."

In Ohio, in the case of *Cincinnati & Zanesville R. R. Co.* v. *Smith*, 22 Ohio St. 244, the court considered the question, whether the fact, that the horses were trespassing on the track, excused the servants of the railroad company from the exercise of ordinary care; and it held it did not; and also the question, whether the additional fact, that the road was fenced, excused the engineer as respects the owner of stray animals, from looking about to see whether such animals were on the track or not; and in reference thereto the court say: "They were bound to use the ordinary precautions to discover danger as well as to avoid its consequences after it became known." And again: "The fact that the road was fenced at the place of collision with the horses, was a circumstance to be considered in connection with the other circumstances of the case in determining, whether the engineer was guilty of megligence, in not looking ahead to discover

the danger in time to avoid it. The fact that the road was fenced rendered it less probable that wandering animals would be on the track; but it cannot be said that the engineer, as a matter of law, by reason of the fences was wholly excused from keeping a look out ahead of the train." The instruction given, which was approved by the court, was: "That the defendant had the right to the free and unobstructed use of its railroad-track, and that the paramount duty of its employes was the protection of the passengers and property in the train, and the train itself. But this being their paramount duty, they were bound to use ordinary care and diligence so as not *unnecessarily* to injure the property of others." See also *Kerwhacker* v. *C. C. & C. R. R. Co.*, 3 Ohio St. 172; *Central Ohio R. R. Co.* v. *Lawrence*, 13 Ohio St. 69; *C. C. & C. R. R. Co.* v. *Terry*, 8 Ohio St. 581.

On the contrary, it has been held in Wisconsin, in *Bennett* v. *The Chicago & Northwestern Railway Company*, 19 Wis. 158: "When the plaintiff's colt was trespassing on the railroad track, the company is not liable for injuring it, unless the injury was inflicted *wilfully* or from *gross negligence* by the company's servants." See also *Stricke* v. *The Milwaukie & Mississippi Railroad Company*, 9 Wis. 202.

In *The Railroad Company* v. *Skinner*, 19 Pa. 51, the case itself was one in which probably the court properly held, that the railroad company was guilty of no negligence; but the syllabus of the case adopting very strong language, used by Gibson, J., is: "that an owner of cattle suffered to go at large, and which are killed or injured on a railway, has no recourse to the company or its servants."

In *Jackson* v. *Rutland & Burlington Railroad Company*, 25 Vt. 150, it was decided, "that a railway company will be liable for either recklessness or want of common care *at the time and after* cattle are discovered by them on their track, or for wanton injury." In that State railroad companies are required to maintain fences along their roads.

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

In *Trout* v. *Virginia & Tennessee Railroad Co.*, 23 Gratt. 619, the plaintiff's horses got out of his field on a railroad-track, by some third person without his knowledge leaving the gate open, and they were killed by the company's engine. The engineer had ample time after seeing the horses to stop the engine before reaching the place where they were killed; but he did not slacken his speed, but merely blew his whistle to frighten them off the track. On a demurrer to evidence by the defendant, the court held that the railroad company was liable.

Syllabus 9.

In this State it has been decided, that it is the duty of the servants of a railroad company, so far as is consistent with their other paramount duties, to use ordinary care to avoid injury to cattle on the track. They are bound to adopt the ordinary precaution *to discover* danger as well as to avoid its consequences after it is known. *Baylor* v. *The Baltimore & Ohio Railroad Co.*, 9 W. Va. 271. And in *Blaine* v. *Chesapeake & Ohio Railroad Co.*, 9 W. Va. 254, it was decided, that the *remote* negligence of the plaintiff will not prevent his recovery for an injury to his property *immediately* caused by the negligence of the defendant. The negligence of the plaintiff, that defeats a recovery, must be the *proximate* cause of the injury; and that suffering cattle to run at large, by means whereof they stray on an unenclosed railroad-track, is not in general a *proximate* cause of the loss; and hence though there may have been some negligence in the owners permitting cattle to go at large, such negligence being only a remote cause of the loss, it will not prevent his recovering from the railroad company the value of the cattle, if the immediate cause of their death or injury was the negligence of the company's servants in conducting the train.

Though these authorities are to a considerable extent conflicting, yet the weight of authority and reason are decidedly in favor of the proposition that though by the negligence of the plaintiff his cattle are on a railroad-

1880
Special Term.

Washington
v.
B & O. R. R.
Co.

track unenclosed, yet the servants of the railroad company are bound to use ordinary precaution to discover that the cattle are on the track as well as to avoid injuring them when they are discovered to be on the track; and if they fail to do so, the company is responsible. This responsibility they will not be relieved from by the fact, that under the circumstances which existed it was the duty of the owner of the cattle to have given to the train, which he saw approaching, a signal of the danger, and he failed to do so; nor by the fact, that the owner of the cattle saw the train approaching and could have driven his cattle off the track, but from negligence failed to do so. A party is only responsible for the natural consequences, which follow from his negligence, that is, such consequences as he might reasonably expect to follow from his negligence. The owner of the cattle, though he neither gave a signal to the approaching train nor drove his cattle off of the track, could not reasonably expect, that, if they were seen in time by the engineer of the railroad train, and he could readily avoid injuring them, he would not do so. Therefore in the view of the law he is not responsible by reason of his neglect for the injury of his cattle. He did not directly contribute to this result; and in the view of the law it was caused entirely by the negligence of the railroad company's engineer in not using the ordinary precaution to discover that the cattle were on the track and to avoid injuring them.

Syllabus 7.

Syllabus 10.

I have examined the various cases referred to by the counsel of the plaintiff in error; and I do not find that any of them are inconsistent with the views I have above expressed. Many of them have a very remote bearing on the questions involved in this case, some of them refer to the extent to which the plaintiff's negligence must contribute directly to the result in order to prevent his recovery, that is, whether it should be a substantial contribution to the result directly, or whether a slight contribution by the plaintiff directly to the result

would bar him, when the defendant's negligence was gross. This point is not according to my view involved in this case, and I have therefore waived expressing any opinion upon it.

A number of these cases sustain the view of Justice Swayne in delivering the opinion of the Supreme Court in *Railroad Co.* v. *Jones*, 5 Otto (95 U. S.) 442, who says : " Where the plaintiff himself has so far contributed to the misfortune by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened, he is not entitled to recover." As I understand Justice Swayne when he speaks of the plaintiff contributing to the misfortune, to mean contributing *directly* and not remotely, there is nothing in that case or in any of the others, to which the counsel for the plaintiff in error refers, to indicate that any contribution of the plaintiff is referred to as barring him of his right of action except *direct* contribution to the result. In fact, as we have seen, remote contribution is not regarded by the law as any contribution. The law, as we have seen, does not regard the remote cause but treats it just as though it had no existence; and when Justice Swayne and others refer generally to the cause of a misfortune, they must be interpreted to refer to the direct or proximate cause and not to the remote cause. So understanding him there is no inconsistency between the views he has expressed and those I have expressed. He seems not to have had in his mind or under consideration, whether the plaintiff's negligence was the proximate or remote cause of the injury, but rather the question, what degree of negligence on his part would bar his recovering.

Negligence is a mixed question of law and fact generally, and what particular facts constitute negligence is generally a question of fact for the determination of the jury from all the evidence before them bearing on the subject, rather than a question of law for the determina-

Syllabus 2.

tion of the court. The most the court can do ordinarily, when there is a contrariety of testimony, and the question of care or negligence depends upon the consideration of a variety of circumstances, is to define the degree of care and caution required by law, and leave to the practical judgment and discretion of the jury the work of comparing the acts and conduct of the parties concerned, with the duties required of them under such circumstances. There may be some cases where the question of negligence may be properly one of law for the court; but such a case must present some prominent act not depending upon surrounding circumstances for its quality, and in regard to the effect and character of which no room is left for ordinary minds to differ. Negligence is, however, generally a relative term, very much dependent upon the particular facts and circumstances of each case' that occurs; so that what may be ordinary or reasonable care in one state of the case may be gross negligence in another.

It is not proper for the court to separate a few facts from their connection with others, and make them the basis of an instruction of this character. Such a course would tend to mislead the jury. While the court has the power to set aside the verdict of the jury, and grant a new trial in a proper case, still it is not proper for the court to derogate from the proper province of the jury, as it would do if it should separate a particular fact from its connection with others on which it is dependent for its quality, and instruct the jury that such fact constitutes or does not constitute negligence. See *Snyder et al.* v. *The Pittsburgh, Cincinnati & St. Louis Railroad Co.*, 11 W. Va. 34-35; *The Baltimore & Ohio Railroad Co.* v. *Fitzpatrick*, 32 Md. 32-44; *The Baltimore & Ohio Railroad Co.* v. *Boteler*, 38 Md. 586; *Merchants Bank of Baltimore* v. *Bank of Commerce use of Hoffman*, 34 Md. 53.

Not only may that be negligence in one state of the case, which would not be in another, but what may be negligence in one country may not be negligence in

another. The common law of England imposes on the owner of domestic animals the duty of keeping them on his own land; and he becomes a trespasser, if they stray upon the land of another unenclosed. But this common law rule is not in force in this State. In this State a railroad company cannot complain, that cattle stray on its unenclosed road. The owner of cattle so straying on an unenclosed road are not trespassers. See *Blain* v. *The Chesapeake & Ohio Railroad Co.*, 9 W. Va. 252, and *Baylor* v. *The Baltimore & Ohio Railroad Co.*, 9 W. Va. 270.

These principles necessarily lead us to the conclusion, that a railroad company, whose road is unenclosed, has no right to presume that the owners of domestic animals will keep them at home and not suffer them to roam upon the track of their railway. The law of West Virginia does not impose such a duty on them.

All the authorities agree, that where damages were occasioned entirely by the negligence of the defendant, the plaintiff is entitled to recover; but the burden of proving this negligence is on him. If the plaintiff has contributed directly to the injury in the manner above fully explained, he cannot recover; but the burden of proof is on the defendant to establish such contributory negligence in this State. See *Snyder et al.* v. *The Pittsburg, Cincinnati & St. Louis Railroad Co.*, 11 W. Va. 30.

Before applying the principles of law we have stated to the case before us, we will dispose of a preliminary question raised by the demurrer to the declaration. The plaintiff in error in his assignment of errors and in his arguments points out no fatal defects in the declaration, and I perceive none. It seems to be substantially like the declaration in *Blain* v. *The Chesapeake & Ohio Railroad Co.*, 9 W. Va. 252, and that declaration this Court held to be good on demurrer.

We will now consider the various errors assigned by the plaintiff in error as occuring during the trial of the

cause and apply to them the principles of law we have stated.

Instruction "A" asked by the defendant's counsel instead of being modified by the court and then granted, ought to have been refused. It was improperly interfering with the province of the jury for the court to instruct them, that it was the duty of the defendant, if she could do so, to drive her horses from the railroad or to warn the defendant of the threatened danger by signal or otherwise, and if she failed in either respect, the plaintiff was guilty of contributory negligence and could not recover. Whether under all the circumstances it was or was not her duty to give a signal of the threatened danger, and whether it was negligence under the then existing circumstances to fail to do so, was a question of fact, with which the court ought not to have interfered. The necessity or propriety of the plaintiff's giving such signal obviously depended on the surrounding circumstances. If for instance the cattle had been in a position, that the engineer could not see them, and the plaintiff could see them, it might be his duty to give the approaching train a signal of this secret danger; and on the other hand if the plaintiff's servants were actively engaged in attempting to drive the cattle off the track, and they were in full view of the engineer, it would have been not only useless but improper for the plaintiff's servants to desist from driving the cattle off the track, to do, what might be under these circumstances an idle thing, that is, to give such a signal. The giving of any instruction therefore by the court on this point was an improper interference by it with the province of the jury on the principles we have laid down; and it was calculated to mislead the jury. If the jury had obviously based their verdict on the assumption, that the plaintiff was guilty of negligence under the circumstances in not giving such signal, and the circumstances had been such as obviously made it the duty of the plaintiff's servants to give such signal, the court

could have set aside the verdict and have granted a new trial. Under the circumstances which existed as shown by the record the court could not properly have set aside the verdict, because the jury assumed, that it was not negligence in the plaintiff to fail to give such signal. Much less could the court properly give an instruction to the jury, which might lead the jury to infer, that it was the duty of the plaintiff to give such signals. But this error of the court did not prejudice the defendant and he could not in this court complain thereof.

It complains however of the modification of this instruction appended by the court, which was in effect, that though the plaintiff had been guilty of negligence in not driving the horses off the track or in not giving a signal to the approaching train, yet the jury should find a verdict for her, if they further found, that after the cattle were discovered by the engineer to be upon the track, or ought to have been so discovered by the use of ordinary diligence, he failed to use ordinary precaution to avoid the danger. Though this modification is not very well worded, it substantially lays down the law, as we have stated it above, and the defendant could not complain of its being given.

The latter part of the defendant's instruction "B," which is, "that when the horses were discovered on the railroad-track, the first and paramount duty of the engineer was to provide for the safety of passengers and property upon the train, and after that to avoid unnecessary injury to them, if it could be done by the exercise of ordinary and reasonable care" is good law ; and in a proper case it ought to have been granted. But there was no evidence tending in the least to show, that the conduct of the engineer in this case was influenced or could possibly have been influenced by his desire first to provide for the safety of passengers and property, upon his train. And the court might for this reason have properly declined to give this part of the instruction. The legal proposition it states is good law, yet it was in-

applicable to the evidence, which had been offered, and was a mere abstract legal proposition, which might, if given by the court, tend to mislead the jury. The first part of this instruction was still more objectionable, as it would, if given, have tended to mislead the jury. They could only draw from it the conclusion, that the railroad company would have a right to complain, that the plaintiff's horses were on their track, though their road ran through the meadow of the defendant and was unenclosed. Such is not the law, as we have seen, in this State. The court thereupon properly rejected the defendant's instruction marked " B."

The first part of defendants' instruction "C." lays down an abstract proposition of law correctly, that is, "that a railroad company has the right to regulate the management and speed of their train solely with reference to the security of persons and property in their charge." But it is difficult to see any bearing this law could have on the facts of the case in evidence before the jury. The instruction then proceeds, "and they may make their plans upon the reasonable and legal presumption that the owners of domestic animals will keep them at home and not suffer them to stray upon the track." It is difficult to say what was meant by the words "they may make their plans." If this refers to the action of the superintendent of the road in making out his time-tables and providing for making connection with other roads, the proposition contained in the instruction is good law; but it is law, which could have no possible connection with this case, could not possibly enlighten the jury as to their duties, and might perhaps mislead them and it ought for this reason to have been refused by the court. If by saying "the company might make its plans upon the legal and reasonable presumption, that the owners of domestic animals would keep them at home and not suffer them to stray upon the track" the instruction meant, as I suppose it did, "that the company might run their trains on this legal presumption,"

1880
Special Term.

Washington
v.
B. & O. R. R.
Co.

Syllabus 8.

then the instruction was obviously pertinent to the case and would have given the jury essential aid in the performance of their duty. But unfortunately for the defendant, if this was the meaning of the instruction, it laid down a proposition which is not good law in this State. It is not a reasonable and legal presumption in this State, that the owners of cattle will keep them at home and not permit them to stray upon the track. The law does not require the plaintiff to keep her cattle at home, but permits her to let them run at large. The railroad ran through her meadow and was unenclosed. She had a right to pasture her horses on her meadow; and having this right, clearly the railroad company could not reasonably presume her horses would not stray upon the railroad-track. On the contrary they ought rather to presume, that they would, and to run their trains with the care and caution which such presumption made necessary. The instruction, I suppose, meant to state the law otherwise; and if it did not, it is obvious that it was liable to be so understood by the jury; and the court therefore did not err in refusing to grant this instruction.

Instruction "B" was well calculated to mislead the jury; and instruction "C" would certainly have done so. They were both properly rejected.

All the evidence is not set forth; and of course this court cannot say, that the circuit court erred in refusing to grant a new trial. The evidence, that is set forth, seems to be such as renders it highly probable, that the jury was justified in finding a verdict for the plaintiff. This court must presume, in the absence of anything showing that the verdict is wrong, that it was right.

The judgment of the circuit court therefore of March 28, 1878, must be affirmed; and the defendant in error must recover of the plaintiff in error her costs in this court expended and damages according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.