HELEN M. OSBORNE, *Administratrix v.* CHESAPEAKE &
POTOMAC TELEPHONE COMPANY

(No. 8876)

Submitted May 2, 1939. Decided June 13, 1939.

*Peyton, Winters & Hereford* and *Lilly & Lilly,* for
plaintiff in error.

*Frederick L. Thomas, Price, Smith· & Spilman, C. W. Strickling* and *Fitzpatrick, Brown & Davis,* for defendant in error.

RILEY, JUDGE:

Helen M. Osborne, administratrix of the estate of Harold M. Safred, plaintiff below, prosecutes this writ of error to the judgment of the circuit court of Cabell County, which set aside a verdict in her favor in the amount of $5,000.00 against the Chesapeake & Potomac Telephone Company of West Virginia, defendant.

The plaintiff originally brought this action of trespass on the case against the Ohio Valley Electric Railway Company and Appalachian Electric Power Company on account of the alleged wrongful death of her decedent. The action was dismissed as to the defendant railway company upon payment of $1,000 to her by it. At the same time, a non-suit was had as to the power company, but at the same term of court, the action was revived, the non-suit was set aside, the case remanded to rules and the telephone company made a defendant. An amended declaration was filed against the defendants, telephone company and power company. All this was done in accordance with the provisions of Code, 56-4-34.

At the time of his death and for five or six weeks prior thereto, plaintiff's decedent was employed by the Try-Me Transfer & Storage Company, as a helper on one of its trucks. On February 26, 1937, he was fatally crushed by a transformer which fell from a truck on which he was a helper. This transformer was ten feet, six inches high and weighed 10,200 pounds. Decedent had helped to load it on the truck for the purpose of transporting it from the Baltimore & Ohio crane at 11th street in Huntington to Kenova. Unloaded, the truck platform was four feet, three inches high. But loaded with the transformer, it was about four feet high. Four chains run in four different directions held the transformer to the body of the truck.

When killed, decedent was on the back end of the truck watching the transformer and chains as the truck

was being driven by one Skaggs with another employee, Johnson, riding in the cab, in a westerly direction along Fourth Avenue to Adams Avenue, thence on Adams Avenue across a bridge known as Four Pole Bridge, and thence in a southerly direction fifty or sixty feet to the place of the injury on Camden Road, a much traveled highway running north and south. As the truck crossed the bridge, decedent was seen to examine the chains which held the transformer. At the place where decedent was killed, Camden Road is paralleled on the west by two street car tracks of the Ohio Valley Electric Company. A telephone pole of the defendant, 35 feet long and buried in the ground a distance of six feet, was located a few feet east of the east curb of the road. At its top there was a crossarm and some wires belonging to the Appalachian Electric Power Company. Somewhat below this crossarm, there ran in a north and south direction a lead cable, about two inches in diameter, which contained two hundred pairs of telephone wires. From this pole, a wire owned by the railway company spanned the road to the traction company's trolley wire and thence to a pole owned by said company at the western edge of its tracks. The record discloses that the telephone company's pole, immediately before the injury, was in an upright position and in good repair.

As the loaded truck proceeded underneath the span of wire, the wire became caught on one of the insulators of the transformer about five to seven inches from the top. At this point, the record discloses that the wire was at least thirteen feet, ten inches above the pavement. This conclusion is the result of a simple mathematical calculation, as follows: height of truck unloaded, four feet, three inches; truck height when loaded, four feet; height of transformer, including insulators on top thereof, ten feet, six inches; total height of truck and insulators, fourteen feet, six inches. As one of the insulators was one inch shorter than the other, the total distance from the pavement to the top of the lowest part of the transformer was fourteen feet, five inches. The record further shows

that the wire was caught on one of the insulators from five to seven inches from the top. Assuming seven inches as the correct measurement, which is most favorable to the plaintiff, the span wire caught on the insulator at a height not less than thirteen feet, ten inches above the pavement.

Within a year before the accident, the same truck loaded with transformers of the same size as the one involved here, had been driven safely under the wire, and a short time before the day decedent met his death, state road machinery and loads of hay of a greater height than the instant truck and transformer had been seen to pass under the wire.

Plaintiff's counsel assert liability on the ground that the wire which caused the injury belonged to the defendant telephone company; or if not, the telephone company, nevertheless, was liable because it permitted the use of its pole for the maintenance of a nuisance. Neither of these assertions we think, however, meets defendant's main ground of defense. Code, 17-8-19, (a) and (b), provides in part:

> "It shall be unlawful and constitute a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or vehicles * * * which is loaded in excess of the limitations stated in this law * * *."
> " * * * no vehicle unladen or with load shall exceed a height of twelve feet six inches * * *."

Thus it appears from this provision of the Code that vehicles being operated on public roads in this state, whether unladen or loaded, shall not exceed the height of twelve feet six inches. That being so, it would seem to us that no one owning or maintaining an overhead wire across a public road is under any duty to maintain it at a height higher than that necessary to clear vehicles within the legal maximum height. In the instant case, the accident would not have occurred had the truck been of a height not in excess of the legal limit. Under these cir-

cumstances, we are at a loss to see how, on any of the theories advanced by plaintiff, the defendant telephone company was guilty of any actionable negligence. There being no primary negligence, no recovery can be had. *Washington* v. *B. & O. R. Co.*, 17 W. Va. 190; *Gunn* v. *Ohio River R. Co.*, 36 W. Va. 165, 14 S. E. 465, 32 Am. St. Rep. 842; *Poling* v. *Ohio River R. Co.*, 38 W. Va. 645, 18 S. E. 782, 24 L. R. A. 215.

Under this view, it matters not that on previous occasions loads higher than the instant one had passed under the wire.

The doctrines of contributory negligence, assumption of risk and plaintiff's primary negligence, sought to be injected into this case by defendant telephone company as a further defense, have no place herein. These questions must await on the threshhold of every negligence case until the door of primary negligence on defendant's part has been opened by proof, sufficient to make a prima facie case.

We therefore affirm the judgment of the circuit court.

*Affirmed.*