CLARK *vs.* THE SYRACUSE AND UTICA RAILROAD COMPANY.

An action for negligence can not be sustained, if the wrongful act of the plaintiff co-operated with the misconduct of the defendant to produce the damages sustained.   And this is so, whether the plaintiff's act was negligent or willful.

It is an act of negligence to suffer cattle to be at large in a highway, at railroad crossings.   Therefore, where the owner of a cow suffered her to be at large in the highway, and upon a railroad track, at the usual time for the passenger train of cars to pass, and the cow was killed by the train of cars ; *Held* that the owner could not recover the value of the cow, in an action against the railroad company.

Although a person has the right to use the highway, for the passage of his cows to and from the pasture, yet he must use ordinary and proper care and diligence in driving them; having reference to the situation of the road, and the manner in which it is used.

Where cows are trespassers upon a railroad, their owners can not maintain an action against the railroad company for running over and killing them by their passenger cars; even if the death of the cows was occasioned by the gross negligence of the defendants.

Accordingly, where it appeared that cows were pastured in a lot adjoining a railroad, between which and the railroad there was no fence, and there was no allegation in the pleadings to authorize evidence that they escaped on to the road through a defect of fences which the defendants were bound to repair, and no averment that the defendants were bound to fence at that point, or showing from what place, in what manner, or how the cattle came upon the road ; *Held* that no action could be maintained against the railroad company for running over and killing the cows, by means of their engines and cars.

THIS action was brought to recover pay for three cows killed by the trains of cars on the defendants' rail road while the trains were going west down the grade which carries the railway over the canal west of Canastota, as the plaintiff alledged, through the defendants' negligence.   The first cow was killed in September, 1845.   She was passing along the highway which crosses the track of the railroad, with two other cows, having no person to attend them, and stepped on to the railway track as the engine was within about two or three rods of her.   A person, in the plaintiff's employ, saw the cows come out of the field into the

Clark *v.* Syracuse and Utica Railroad Company.

highway ; heard the train coming when it was one or two miles off, expressed a fear that the cows would be run over.   The train was the regular passenger train, and passed at the usual hour. The cows came into the road through the bars, which were down, but by whom or for what purpose, they were let down, did not appear.   The engineer did all he could to stop, but could not, and 'two of the passenger cars were thrown from the track, as appeared by the testimony of the engineer.   The other two cows were killed together, in August, 1847.   The plaintiff's cattle, to the number of 10 or 12, were running at large on the track of the railroad, 15 or 20 rods west of the highway.   It did not appear how they came there.   The defendants had remonstrated to him against the practice of suffering his cattle to run on the railroad track, and requested him to keep his cattle off the track. At the time of the accident the plaintiff knew that his cattle were on the railroad.   He saw them there half or a quarter of an hour before the cars came along, and his brother saw them two hours before.   He heard the train coming, when it was a mile and a half or more, away.   The defendants, at this time, for the purpose of lessening the grade, had taken up the north track of their road, and raised the embankment upon it four feet higher than the south track, upon which the train was passing.   The plaintiff's brother undertook to drive the cattle on this high embankment and off of the road.   They got to hooking each other, and the two cows which were killed jumped down into the track just ahead of the engine.   The ties lay up a foot and a half or two feet from the ground, so that the cows could not run, and they were struck by the engine and killed.   The engineer saw the cows when he was 50 or 60 rods off, as he came around a curve.   He gave the signal to break, reversed his engine, did all he could to stop, and had so far succeeded in checking his speed that he ran but about two or three rods after the engine struck the cows.   There was no evidence to show where the cows were pastured on the day of the accident, but the *defendants* showed that on the day before, and for some time previous, they were pastured in a 12 acre lot north of the railroad and east of the highway, and that there was no fence be-

tween that lot and the railroad. The defendants offered in evidence an agreement in writing, made between them and Asa Allis, who was proved to have been in possession of the land at the time the railroad was built, by which Allis agreed to maintain the fences along the railroad, and discharged the defendants forever from the obligation to maintain them. The evidence was objected to by the plaintiff, and excluded by the justice upon the ground that it raised a question of title. But the defendants did show without objection, that Allis actually built the first fence that was built after the railroad was constructed. The contractors for building the embankment purchased a strip of land along the railroad for the purpose of getting earth to make the embankment, and they took up the fence which Allis built, and laid it back on the plaintiff's land. The defendants had nothing to do with the purchase of the land, nor with the removal of the fence.

The jury gave a verdict for $65, the full value of the three cows, and the justice rendered judgment for $65 damages, and $5 costs. The defendants appealed to the county court, where the judgment was affirmed, and they appealed to this court.

*S. T. Fairchild,* for the defendants.

———— *Snow,* for the plaintiff.

*By the Court,* ALLEN, J. Most of the questions which are presented in this cause, were considered and settled in *The Tonawanda Railroad Co.* v. *Munger,* (5 *Den.* 255,) and so far as the principles of that case are involved in this, we shall content ourselves by referring to and applying them to the facts. It would be a work of supererogation to add any thing to the reasoning of the able judge who pronounced the decision of the court, or to add to the list of authorities by which his conclusions are fortified. One of the doctrines laid down in that case, and which was before well established, is that an action for negligence can not be sustained, if the wrongful act of the plaintiff co-operated with the misconduct of the defendant to produce the

damages sustained, and that this is so, whether the plaintiff's act be negligent or willful. The same rule is expressed in other cases, in language slightly different. In *Spencer* v. *Utica and Schenectady Railroad Co.* (5 *Barb. S. C. R.* 338,) it is said, "It is necessary for the plaintiff to establish the proposition that he himself was without fault." In *Brown* v. *Maxwell*, (6 *Hill*, 592,) it is said, "A plaintiff suing for negligence must himself be without fault." Was the plaintiff without fault, then, in suffering his cow which was killed in 1845, to be at large in the highway and upon the railroad track at the time of the accident? It was the usual time for the passenger train of cars to pass that point. It is conceded that the cow did not escape on to the road from the land of the plaintiff through any defect of fences which it was the duty of the defendants to repair. The evidence shows clearly that the bars to the field in which she was pastured were opened by some one, and the cow suffered to find her way alone to the plaintiff's house, which was at some distance on the opposite side of the railroad track. If the cow was thus suffered to go at large and alone along the highway and across the track, by the act of the plaintiff, or his servants, he is responsible for the consequences if such act contributed to the injury. And if the opening of the bars was the wrongful act of a stranger, still the defendants are not responsible. The wrongdoer must answer for it. It was an act which the defendants had no reason to expect, and were not called upon to guard against. In *Brownell* v. *Flagler*, (5 *Hill*, 282,) Bronson, J. says that it would be negligence to suffer a cow and a lamb to escape into a highway, and that if the lamb had been killed by a passing carriage, without any intentional fault in the driver, the owner would have had to bear the loss. And if it be negligent to suffer cattle to run at large on an ordinary highway, exposed to no danger except from the passing carriages, *a fortiori* is it an act of negligence to suffer cattle to be at large in a highway at railroad crossings. The defendants have the same right to occupy their roadway at the crossing for the passage of their cars, that a traveler has to use the highway for his purposes. It is true the plaintiff had the right to use the highway for the passage of his cows to and

from the pasture ; but he must use ordinary and proper care and diligence in driving them, having reference to the situation of the road and the manner in which it is used. What would be proper care in one case might be gross negligence in another. At one time of day when no cars were passing, cattle might with impunity be suffered to pass and repass this railroad crossing without a driver. But not so at the hour at which this cow was killed. It is very clear that if the cows upon this occasion had been properly attended and driven, the accident could not have happened. And it is equally clear that the accident could not have been prevented by the defendants, at least not without extreme care, and that degree of diligence which they were not required to exercise. Ordinary care on the part of the plaintiff would have prevented the accident, and the loss must fall upon him. (*Hartfield* v. *Roper*, 21 *Wend. R.* 615.) The jury evidently rendered a verdict for the value of the three cows, as they estimated such value, but what amount they allowed for each can not be known, and as they erred in allowing to the plaintiff the value of the cow killed in 1845, the judgment must be reversed. But we are of the opinion that the plaintiff also failed to make out a cause of action in respect to the two cows killed in 1847. And without elaborating upon this branch of the case, the following reasons may be stated as among those which would upon the evidence preclude a recovery in this action.

I. The cows were trespassers upon the road of the defendants, and therefore the plaintiff can not maintain an action for their death, even if it was occasioned by the gross negligence of the defendants. (*The Tonawanda Railroad Company* v. *Munger*, 5 *Denio*, 255.)

II. There is no allegation in the pleadings to authorize evidence that they escaped on to the road through a defect of fences which the defendants were bound to repair. The reply alledges merely that the plaintiff was not bound to fence along the railroad about or near where the injury was committed. There is no allegation that the defendants were bound to fence at that point; neither is it averred from what place, in what manner, or how the cattle came upon the road.

III. There is no evidence to show in what manner the cows came upon the road.

IV. If the cattle escaped from the 12 acre piece, then the plaintiff was guilty of negligence in placing them there ; it being well known to him that there was no fence, and nothing to prevent their going on to the road. Even if it be conceded that the defendants should have made the fence, it can not, in this case, vary the result. The fence was not made. The statutory obligation resting upon the defendants might have been enforced, but it by no means authorized the plaintiff to turn his cattle upon the railroad track to the jeopardy of their lives and the lives of those passing over the road of the company. There are other difficulties in the plaintiff's case, which we will not refer to. Judgment of the county court and of the justice reversed.

[OSWEGO GENERAL TERM, May 5, 1851. *Pratt, Gridley, Allen* and *Hubbard,* Justices.]