22b 574
41ap 98

22b        574
168 NY 7627

TERRY *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

In actions brought to recover damages for an injury alleged to have been occasioned by the negligence of the defendant, whether the defendant be an individual or a corporation, to entitle the plaintiff to recover, he must show some fault on the part of the defendant. And that fault will not be inferred merely from the injury; unless the defendant is a common carrier of persons and the plaintiff was a passenger.

The plaintiff in such an action cannot succeed if it appears that his own misconduct co-operated with the wrongful act of the defendant, to produce the injury complained of.

The plaintiff cannot succeed if it appears that the injury complained of was received by him while he was trespassing upon the defendant, without proving that such injury was willful and intentional, on the part of the defendant.

Where a fence, between a rail road and the adjoining farms, which it is the duty of the land owners to keep in repair, is destroyed by fire communicated by the engines in use upon the rail road, and the rail road company neglects to rebuild such fence, this will not render the company liable for the value of a horse which strays upon the track of the road from an adjoining pasture where it is kept, through the open fence, and is killed by the engine.

Although the rail road company may be liable to pay the owners of the fence the damages occasioned by the burning thereof, they are under no legal obligation to repair it, under such circumstances; nor have the owners a right to abandon the rest of their property, and charge the rail road company for all the damages they may sustain by reason of such neglect or abandonment, while the fence remains unrepaired.

Terry *v.* New York Central Rail Road Co.

And if an individual suffers his horse to run at large in a pasture adjoining a rail road, between which and the rail road there is no fence, without showing any legal reason or excuse therefor, this is such carelessness and negligence on his part, that if the horse goes upon the rail road track and is killed, without any willful negligence by the rail road company or its servants or agents, he can have no remedy against the company.

Where a rail road company, which cannot become entitled to the possession and use of land required for the purposes of its road, except on the payment of the damages sustained by the several proprietors, by the appropriation of their land, lays out its road through a farm, causes the damages to be assessed, and takes possession of the land required for its road, and continues in the public and undisturbed possession thereof for several years, this is *prima facie* evidence that it has paid to the land owner the amount of the assessment.

THIS was an appeal from a judgment of the county court of Genesee county, reversing a judgment of a justice's court. The action was brought in the justice's court, in February, 1853, by Van Rensselaer Terry against the rail road company, to recover damages for killing a horse. In his complaint the plaintiff alleged that the defendants were a rail road company, existing and transacting business under the statutes of this state. That on the 8th day of December, 1853, at Batavia, the plaintiff owned a valuable horse, which, on that day, the defendants by their servants and agents carelessly and negligently ran upon, with an engine and train of cars, and killed. That the said horse was then being kept and pastured upon the premises of the plaintiff, adjoining the defendants' rail road. That prior thereto the defendants' locomotive engine, through the carelessness and negligence of the defendants' servants and agents, had burned down and destroyed the fences between the said track and the premises of the plaintiff, by means of which the horse escaped upon the track of the defendants, and was killed, as above mentioned, to the plaintiff's damage of $100, for which sum he claimed judgment.

The defendants, in their answer, denied each and every allegation contained in the complaint, generally and specifically, except, that they were a rail road corporation, and averred that if any damage was done, in the manner described in the complaint, it was for the want of fences which the plaintiff, or the

Terry *v.* New York Central Rail Road Co.

owner of the land, was bound to build and keep in repair, him-self. On the trial, before the justice and a jury, in March, 1853, the plaintiff gave evidence tending to show that at the time of killing the horse, and at the time of the trial, he owned and occupied a piece of land adjoining the defendants' rail road. That Hollister, the witness, sold this piece of land to the plain-tiff, in February, 1852. That the whole lot owned by Hollister contained about six acres, and was over 30 rods on the rail road. That the plaintiff owned one acre, which was about five or six rods on the rail road. That there had never been a partition fence built between the witness and the plaintiff, on that side of the rail road. That they occupied the pasture together. At the time the witness bought the land, there was a fence along by the rail road track where the horses were kept, in 1852. In the summer of 1852 about 15 rods of it were burned, and it was rebuilt by the defendants, with the aid of the witness. Towards the fall of 1853 it took fire and was burned again. No fence had been there since. The witness saw the fence on fire; there was no fire in the adjoining lot. The locomotive passed and repassed along there continually, every day; and sparks and fire flew from the locomotives. The witness had seen live coals fall from them on to the track. The witness knew the plaintiff's horse, and saw it lying by the track, dead. He saw it the last time, alive, about 1 o'clock, in the pas-ture. He next saw the horse, some 4 or 5 o'clock on the 8th of December, lying by the track; the horse's hind legs were cut off; one hoof and some blood were on the track; one hoof lay by the track. The witness saw her (the mare) the next morning. She was dead. Some of the road hands buried her. The witness saw engines passing on the road that day. The horse was worth 60 or 65 dollars, more or less. The witness testified that he owned the rest of the pasture not owned by the plaintiff. That no division fence had ever been built across the lot between the witness and the plaintiff, since the fence adjoining the rail road was burned, in 1853. About 15 rods were then burned down clear to the ground. There had been no fence there for a year or more. Where the fence was burned down it was on

the witness' part of the land, and not on the plaintiff's. The plaintiff introduced another witness, who gave some evidence tending to prove that the mare was worth from 60 to 75 dollars; and also tending to show that in 1836 the lot of land on which the pasture was situated was owned by Judge James W. Stevens. The plaintiff here rested, and the defendants moved for a nonsuit, on the grounds, 1. That it appeared that the horse escaped from the premises of E. F. Hollister, and the defendants were not liable to the plaintiff for such escape. 2. That the plaintiff had not shown that the defendants were bound to fence the road. 3. That there was no evidence that the defendants or their agents or servants killed the horse. 4. That there was no negligence or carelessness on the part of the defendants, as alleged in the complaint, shown on the trial. The motion was denied, and the defendants excepted.

The defendants then produced a witness who testified that he knew the pasture lot spoken of; that he had known it 40 years, and been in that neighborhood and near there. That in 1836 James W. Stevens owned the lot—in January, 1836, at the time the old Tonawanda Rail Road Company built the road. The defendants then read in evidence, from the records in the clerk's office of Genesee county, a report made on the 26th day of January, 1836, by three appraisers appointed by the vice chancellor of the 8th circuit to assess the damages which the said James W. Stevens would sustain, as the owner of the pasture lot, by reason of the appropriation of a part of the lot, by the corporation, to the use of the rail road. It appeared from this report that the appraisers assessed the damages of the said Stevens at the sum of $102; it being understood and agreed that he should make and maintain the fences on both sides of the rail road. This record was objected to by the plaintiff, on the grounds, 1. That it did not sufficiently connect the plaintiff with the instrument. 2. That the record only bound Stevens, and did not bind the plaintiff. The record was received by the justice. The defendants also offered in evidence the acts of April 9th and June 2d, 1835, which were

objected to by the plaintiff, but permitted to be read, by the justice.

The defendants then produced a witness who testified that he knew the pasture lot; that on the 8th of December last he was at work near where the horse was killed; that he had been along the track every day; that Hollister and Terry owned the pasture lot; that there was no fence along Hollister's part for some time before the horse was killed; that he saw four horses in there on that day; the horse that was killed was in there; she was driven off the road twice on that day, before she was killed; the witness sent a man to do it; the witness saw the mare lying by the rail road after she was hurt, about half past three; the train that hurt the mare ran no faster than usual; the witness was at that time in the employ of the defendants. There was at that time a fence in front of Terry's land by the rail road. The horses came on the track at the west end of Hollister's part of the pasture. There was another horse killed at the same time. There were three horses on when the witness had them driven off. The witness saw the plaintiff's mare was hurt, about ten minutes after the train passed. The train nearly stopped before the horses were hit. It was the way express train. The mare was on the defendants' land, on the track.

Upon substantially the above proof, the jury found a verdict for the plaintiff, for $65 damages, upon which the justice gave judgment against the defendants for $68.75. On appeal to the county court this judgment was reversed, and the plaintiff appealed to this court.

*Wakeman & Bryan*, for the appellant.

*M. F. Robertson*, for the respondent.

*By the Court*, MULLETT, J. A correct understanding of the subject brought before us by this appeal may require some examination of the common law rules regulating the rights, duties and liabilities of adjoining land owners, in reference to partition

fences. At common law the owner of land was not obliged to fence against the beasts of an adjoining close, but he was at his peril to keep his own cattle on his own premises, and to prevent them from escaping ; and if they escaped, they might be taken, on whatever land they might be found, damage feasant ; or the owner was liable to an action of trespass, at the suit of the party injured by them. Every unwarrantable entry upon the land of another is a trespass, whether the land be inclosed or not. And a person is equally answerable for the trespass of his cattle as of himself. (12 *John.* 433. 19 *id.* 385. 3 *Wend.* 145, 442. 3 *Hill,* 38, *and cases there referred to.*) When there was no agreement or prescription, there was no mode by which one tenant could compel the tenant of an adjoining close to make division fences ; and even when there was such agreement or prescription, the remedy was by action on such agreement or prescription. (*Per Savage, Ch. J. in Holladay* v. *March,* 3 *Wend.* 145.) By the statute entitled "Of division and other fences," (1 *R. S.* 353,) the legislature made provision for enabling each of two or more adjoining owners of lands to compel the other adjoining owners to make and maintain a just proportion of the division fences between them, unless he should choose to let his lands lie open. This law, both the common law and the statute, was held to be applicable to division fences betwen rail road companies and the owners of the adjoining lands. (*In the matter of the Rensselaer and Saratoga Rail Road Co.,* 4 *Paige,* 553.) · That part of the defendants' rail road upon which the plaintiff's mare is alleged to have been killed, was laid out and located, and the land taken for its use appropriated, under the act to incorporate the Tonawanda Rail Road Company, passed April 24, 1832. By the 16th and six following sections of that act it was provided that, in case the corporation should not be able to acquire the title to the lands through which the said rail road should be laid, by purchase or voluntary cessions, the directors might present a petition to the vice chancellor of the eighth circuit, praying for the appointment of appraisers to assess the damage which the owners of such lands should severally sustain by reason of the appro-

priation thereof by the corporation to its own use. (*Sec.* 17.) And in assessing such damages, the appraisers were to take into the account the benefit which would accrue to such owners by means of the passage of the said rail road through his lands. (*Sec.* 20.)

It was proved, on the trial of this action, that in January, 1836, when the old Tonawanda Rail Road Company built its road, the land now called the pasture, and a part of which is owned by Ebenezer F. Hollister and a part by the plaintiff, was then owned by James W. Stevens. It appears by the report of the appraisers appointed by Judge Gardner, vice chancellor of the eighth circuit, to assess the damages which James W. Stevens, as the owner of the pasture lot, would sustain by reason of the appropriation of a specified part of the lot, by the corporation, to the use of the said rail road, that such damages were assessed at the sum of $102; and that one of the conditions of the assessment of that sum, mentioned to Judge Stevens at the time, and acquiesced in by him, was, that he should make and maintain the fences on both sides of the rail road. If James W. Stevens had continued to own the pasture lot to the time of the injury complained of, and the mare that was killed had been his, it is clear that he could have recovered no damages, as the injury was occasioned by the defect of fences which he was bound to build and keep in repair.

The Tonawanda Rail Road Company and the Attica and Buffalo Rail Road Company were consolidated and amalgamated into a single corporation, by virtue of the act of April 9, 1850. By the 6th section of that act it is declared that such new corporation shall not be required to fence the land, on either side of the rail road, between Rochester and Buffalo, where either of the two corporations mentioned in the first section of the act, had, by agreement with the owners of the land, or by the award of appraisers, made provision for having such fences built and maintained by the owners of such lands, and have paid such owners according to such agreement or award. And as to such cases, the provisions of the 42d section of the act entitled "An act to authorize the formation of rail road com-

panies, and to regulate the same," passed April 2d, 1850, shall not be deemed applicable to such new corporation.

The damages which James W. Stevens sustained, by reason of the appropriation of his land by the Tonawanda Rail Road Company, were assessed, and reported to the vice chancellor in January, 1836. The company was not entitled to the possession and use of the land, for the purposes of its rail road, except on the payment of such damages, or depositing the amount thereof, for the use of the owners, in the Bank of Rochester. The Tonawanda Rail Road Company, though under a new name, was, up to the year 1853, in the public and undisputed possession of the land, for the uses and purposes for which it was appropriated. This must be prima facie evidence that it had paid the assessment upon which its right to take possession depended; especially as this fact was not denied on the trial. The case, on the trial before the justice, therefore, did not show, or tend to show, that the plaintiff's mare escaped from his pasture, on to the rail road, through the absence or defect of a fence which the defendants, as proprietors of the rail road, were bound to build and keep in repair, but rather that she went on to the rail road through the absence or defect of a fence between the rail road and the lands belonging to Hollister, which James W. Stevens or his grantees were bound to maintain, in which the plaintiff had no interest, and in respect to which the defendants, as the proprietors of the rail road, owed to him no duty.

But the appellant put his right to recover, in the justice's court, against the defendants, principally on the ground that the evidence tended to show that the agents and servants of the defendants, in running their locomotive and cars, on the rail road, burned a part of the fence between the rail road and Hollister's pasture, and that the mare, being rightfully in the pasture, came on to the rail road through the gap in the fence made by such burning. And he claimed that the defendants were bound to repair the fence, and pay all damages which the plaintiff might sustain by the escape of his cattle through the defect in the fence, until it was repaired, whether he was

careless or negligent in taking care of them, or not. Or, in the language of the appellant, it is claimed that "it was the grossest negligence, on the part of the defendants, to run their engines past this unfenced lot, until they had restored it to the condition in which they found it." That the persons along the rail road, from Buffalo to Rochester, whose fences are so burned, are not bound to house their cattle in the summer, or let their farms lie idle. They might use their own farms in the usual manner and charge the company for damages caused by such company through want of the fences thus burned." Waiving, for the present, the consideration of the insufficiency of the plaintiff's evidence to show that he had any interest in the fence destroyed, or any right to complain of its destruction; or to show that the defendants or their servants were guilty of any negligence or fault in burning the fence, or in killing the mare, and conceding to the plaintiff all the facts assumed to have been proved by him, still the legal conclusions claimed by him do not follow. Although the defendants might have been liable to pay the owner the damages for burning the fence, they were under no legal obligation to repair it; nor had the owner a right to neglect or abandon the rest of his property, and charge the defendants for all the damages he might sustain by reason of such neglect or abandonment, until the fence was repaired, any more than the owner of a store filled with valuable goods, which happened to have a door or window destroyed by the carelessness of his neighbor, might neglect and abandon his goods and suffer them to remain in the store in the usual manner, and charge his neighbor for all the goods which might have been taken or lost before he repaired the store. Still the affirmative of the proposition is understood to be, in substance, identical with that insisted upon by the appellant's counsel, on the argument of this appeal.

But a full and fatal answer to the plaintiff's action, in whatever aspect it may be presented, is the carelessness on his part, as proved by himself. It appeared by the testimony of his own witnesses that he suffered his mare to run in a small pasture adjoining the rail road, and between which and the rail

road there had been no fence since the latter part of the summer preceding, until the day she was killed on the rail road, which was the 8th of December. This is the case as made out by the plaintiff, without showing any legal reason or excuse for permitting his mare to run at large, as she did, or to run on the defendants' rail road, and without pretending that the defendants, their agents or servants, intentionally, willfully or knowingly ran their engine against the mare. It is believed that no reported case can be found, giving a plaintiff any encouragement for maintaining an action under such circumstances. The common law rule that an action for negligence cannot be sustained if the wrongful act of the plaintiff co-operated with the misconduct of the defendant to produce the damage complained of, is well settled. Although the rule might be supported by a series of English and American decisions, extending from the case of *Blyth* v. *Topham* (*Cro. Jac.* 158) to the present time, yet it is considered sufficient to refer to some of the more recent cases in this state. The case of *The Tonawanda R. R. Co.* v. *Munger*, (5 *Denio*, 255,) was one in which Munger had sued the rail road company to recover for a yoke of oxen which the defendants had run over and killed, while they were straying on the track. Mr. Justice Beardsley, after referring to the above mentioned rule, held that a rail road company was not liable for negligently running an engine upon and killing the cattle of the plaintiff which had come from the highway upon the track of the rail road, though there was no physical obstruction to prevent their entering. This judgment was affirmed in the court of appeals. (4 *Comst.* 349.)

In the case of *Spencer* v. *The Utica and Schenectady R. R. Co.*, which was brought to recover damages of the defendants for an injury sustained by the plaintiff in consequence of the defendants negligently running their train of cars against the plaintiff's wagon, while he was crossing the rail road, it was held that in order to warrant a recovery, it must not only appear that the defendants' agents were guilty of negligence, but that the plaintiff himself was free from negligence or fault. (5 *Barb.* 337.) In the case of *Brand* v. *The Troy and Sche-*

*nectady R. R. Co.* (8 *Barb.* 368,) the plaintiff had brought his action to recover damages for being struck down and run over by the defendants' locomotive and tender while she was walking upon the track of the rail road, upon a side-walk in one of the streets of the city of Schenectady. The plaintiff had recovered judgment at the circuit, from which the defendants appealed to the general term of the supreme court in the 4th district. The judge, at the circuit, had refused, upon the request of the defendents' counsel, to charge the jury that if they believed, from the evidence, that the plaintiff was guilty of negligence and imprudence at the time of the occurrence, and that such negligence and imprudence contributed to the injury complained of, she was not entitled to recover. The defendants' counsel excepted, and this exception presented one of the points made on the appeal. Upon this point the appellate court, after referring to and examining several English and American cases, (Willard, J., delivering the opinion,) came to the conclusion that an action could not be sustained against a rail road company for damages occasioned by a collision between a locomotive and the plaintiff, if the plaintiff's own negligence and imprudence contributed to the injury; and reversed the judgment given at the circuit.

The case of *Clark* v. *The Syracuse and Utica R. R. Co.* (11 *Barb.* 112,) was brought in a justice's court, to recover pay for three cows killed by the train of cars on the defendants' rail road, as the plaintiff alleged, through the defendants' negligence. The jury, in the justice's court, gave the plaintiff a verdict for the value of the cows, upon which the justice rendered judgment. The defendants appealed to the county court, where the judgment of the justice was affirmed, and the defendants appealed to the supreme court in the 5th district. That court, (Allen, J., giving the opinion,) among other things, decided that an action for negligence could not be sustained if the wrongful act of the plaintiff co-operated with the misconduct of the defendants, in producing the damages sustained, and this was so, whether the plaintiff's act was negligent or willful. And that when cows are trespassers upon a rail road, their own-

ers could not maintain an action against the rail road company for running over and killing them by their passenger cars, even if the death of the cow was occasioned by the gross negligence of the defendants; and it appearing, in that case, that cows were pastured in a lot adjoining the rail road, between which and the rail road there was no fence, and there being no allegation in the pleadings to authorize evidence that they escaped on to the rail road through a defect of fences which the defendants were bound to repair, and no averment that the defendants were bound to fence at that point, or showing from what place or in what manner, or how, the cattle came upon the road, it was held that no action could be maintained against the rail road company for running over and killing the cows by means of their engine and cars.

In the case of *Haring* v. *The New York and Erie R. R. Co.* (13 *Barb.* 9,) this doctrine, requiring the party who, in an action, claims damages for an injury occasioned by carelessness or negligence of the defendants, to show that the party who received the injury was free from any act which contributed to produce it, was applied to an action brought by a widow, for the loss of her husband, who was killed by the defendants' cars while crossing their rail road. And it clearly appearing, on the trial, that the carelessness of the deceased co-operated with the negligence of the defendants in producing the injury, the supreme court held that the circuit judge did right in nonsuiting the plaintiff.

The same doctrine was again recognized in the case of *Talmadge* v. *The Rensselaer and Saratoga R. R. Co.* (13 *Barb.* 493 ;) and again, in the case of *Marsh* v. *The New York and Erie R. R. Co.* (14 *Barb.* 364,) although the company had omitted to build fences, as required by the statutes of 1849 and 1850. And the supreme court, in the 8th district, (Marvin, J., giving the opinion,) have applied the same principle to the father of a lunatic son, near 30 years old, who, while bringing him home from the insane asylum, on the rail road, carelessly or thoughtlessly left him alone, or unattended, in the cars, at a stopping place, for a few moments, and the son not being able

in the absence of his father to show his ticket, pay his fare, or give any account of himself, and not indicating by any signs his mental derangement, was, before his father found him, put out of the cars, and left to wander on the rail road, and was run over by the next train and killed. The father having taken letters of administration brought an action against the rail road company, under the act of December 13, 1847, to recover compensation of them for causing the death of his son by their wrongful act, neglect or default. His action was defeated, on the ground that it appeared that his own carelessness or negligence, as the temporary guardian of his son, contributed to the injury complained of. (*Willett's Adm'r* v. *The Buffalo and Rochester R. R. Co.* 14 *Barb.* 585.)

From the above decisions, and those cited to support them, we may extract the following propositions as law:

*First.* That in all actions brought to recover damages for an injury alleged to have been occasioned by the negligence of the defendant, whether the defendant be an individual or a corporation, to entitle the plaintiff to recover, he must show some fault on the part of the defendant; that that fault will not be inferred merely from the injury, unless the defendant is a common carrier of persons and the plaintiff a passenger, as in the the case in 16 *Barb.* 113; upon which hypothesis we are not called upon to give an opinion.

*Second.* That in such action a plaintiff cannot succeed, if it appears that his own misconduct co-operated with the wrongful act of the defendant, to produce the injury complained of.

*Third.* That the plaintiff, in such an action, cannot recover, if it appear that the injury complained of was received by him while he was trespassing upon the defendant, without proving that such injury was willful and intentional on the part of the defendant. Either of the above propositions (and they are all applicable to the case under consideration) justified the county court in reversing the judgment of the justice.

The judgment appealed from must therefore be affirmed.

[NIAGARA GENERAL TERM, September 15, 1855. *Bowen, Mullett* and *Greene,* Justices.]