MARGARET BOYLE, AS ADMINISTRATRIX, ETC., OF PETER BOYLE, DECEASED, RESPONDENT, v. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, APPELLANT.

*Liability of a railroad for cattle killed while trespassing upon its tracks — it is not obliged to reduce the speed of its trains to avoid them.*

Upon the trial of this action, brought to recover damages for the negligent killing of three of the plaintiff's horses, it appeared that the horses escaped from the plaintiff's pasture upon the defendant's tracks, through an opening in a fence which the defendant was bound to keep in repair; that such opening was caused by the removal by some person, not in the employment of the defendant, of a panel in the fence a few hours before the accident occurred. The jury found, in answer to a special question, that the defendant was not guilty of any negligence in omitting to repair the fence before the horses were killed. The evidence showed that the accident occurred in the night time, when the train was moving at its usual rate of speed, not exceeding the rate of fifteen or twenty miles an hour; that the horses moved along the track only a few rods in front of the train, and were followed by it for the distance of half a mile before they were struck, although there was no obstacle to prevent their escaping from the tracks at any moment; that the engineer sounded the whistle for the last half of the distance, during which time the horses could be seen by him by the aid of the head-light; that the speed of the train was not reduced after the horses were discovered, although the engine could have been brought to a full stop within the distance of twenty-five rods.

*Held*, that as the defendant was under no legal obligation to reduce the speed of the train, and as the evidence was insufficient to establish the fact that the engineer acted wantonly and maliciously, the court should have refused to submit that question to the jury, and that a verdict rendered by them in favor of the plaintiff should be set aside.

APPEAL from a judgment in the plaintiff's favor for the sum of $692 damages and $134.85 costs, entered upon a verdict rendered

at the Cattaraugus Circuit, and from an order denying the defendant's motion for a new trial founded upon the minutes of the trial court.

The action was for damages caused by the defendant's having, as alleged, negligently killed three of the plaintiff's horses by running over the same with one of its engines.

*Sprague, Morey & Sprague*, for the appellant.

*Ansley & Davie*, for the respondent.

BARKER, J.:

The plaintiff's horses escaped from his pasture field on to the defendant's tracks, and were there run over and killed by a passing train of cars. The evidence tended to show that the fence between the pasture and the tracks, which was for the defendant to support and maintain, was out of repair and not of the height and strength required by statute, and had been so for some time previous to the accident, and that in consequence thereof the horses escaped from the plaintiff's inclosure. The defendant's evidence tended to rebut and contradict the plaintiff's proofs on this point, and to establish that the fence was in good order, and that, in the afternoon of the day of the accident, and only a few hours before it happened, a panel in the fence was removed by some person not in the employ of the defendant, and that the horses escaped through the gap thus made, and that the defendant's servants were ignorant of this occurrence. In answer to a special question submitted to the jury, they found that the horses escaped at that place. The court instructed the jury, that if the horses did escape at this point, then the defendant was not guilty of any negligence in omitting to repair the fence before the horses were killed, and was only liable in case they found that the defendant's servants in charge of the train intentionally and maliciously killed the horses.

It is thus made to appear by the general and special verdict that the injury which the plaintiff has suffered did not occur by any omission of duty charged upon the defendant by the statute requiring it to keep the fence in repair. The only question presented for our consideration is, whether any liability has been established by the rules of the common law subjecting the defendant to the

damages which the plaintiff has sustained by the loss of his property. The horses were estrays, and trespassing upon the defendant's premises when killed, and for these reasons the defendant was under no obligation to be vigilant and cautious in running its trains, with a view not to injure any cattle which might come within its inclosure without any neglect or breach of duty on its part. (*Tonawanda R. R. Co.* v. *Munger*, 5 Denio, 255; S. C., 4 Comst., 349; *Terry* v. *N. Y. C. R. R. Co.*, 22 Barb., 574.)

The decisions in those cases were placed upon fundamental principles of law defining the duty which the owner of land owes towards a wrong-doer trespassing upon his premises, and they have not been departed from in any subsequent case. But injuries inflicted by design are never excused, for the law is not so unjust and cruel as to regard a trespasser upon lands of another as an outlaw, and so the wrong-doer may justly complain if an injury has been done to his person or his property intentionally and maliciously.

At the close of the evidence the defendant's counsel requested the court to direct a verdict in its favor, upon the ground among others, that the evidence did not sustain the claim that the engineer in charge of the train acted recklessly and maliciously in running down the horses. This request was properly refused, for the reason that the evidence tended to show that the horses escaped from the plaintiff's field at a place other than at the gap, and by reason of the defendant's negligence in not keeping the fence in repair as required by statute. But we are of the opinion that the evidence failed to establish a case justifying the jury in their conclusion that the defendant's servants in charge of the train were guilty of intentionally running down the horses. The evidence may, perhaps, justify the conclusion that they were careless and negligent in running the train after the horses were observed, but such conduct on their part, however reprehensible it may be in morals, is not sufficient in law to justify a recovery against the defendant for the value of the property. The train was running at the usual rate of speed, not exceeding the rate of fifteen or twenty miles an hour and in the night time. The evidence tended to show that the horses had moved along the track in front of the train, and were followed by it for the distance of half a mile before they were struck, and that the engineer sounded the whistle for the last half of the distance, and

during that time the horses could be seen by the engineer by the aid of the head-light, and that they were only a few rods ahead of the engine. The speed of the train was not reduced after the horses were discovered, and the only effort to avoid injury to the horses was sounding the whistle. The engine could have been brought to a full stop within the distance of twenty-five rods. This is the most favorable statement of the case which can be made in the plaintiff's favor.

The defendant was under no legal obligation to reduce the speed of the train, and there is no evidence that the speed was accelerated after the engineer knew that the horses were on the tracks. The defendant was engaged in operating its road in the usual and customary way as it had a clear and lawful right to do. The defendant had the unqualified right to use its property in any way and manner it was pleased to do up to the point of doing an intentional injury to the property of another. There was no obstacle to prevent the horses escaping from the tracks to a place of safety any moment, and at any time after they were discovered by the engineer up to the instant they were struck and killed on the bridge. The usual and ordinary means adopted to drive cattle from the tracks is the noise of the train and the sounding of the whistle or bell, and such signals are generally sufficient for that purpose without checking the speed of the train. (*Bemis* v. *Railroad*, 42 Vt., 381).

We are not aware of any rule of law that requires a railroad company to do more with a view of avoiding injury to cattle trespassing upon its tracks. It is impossible to conjecture why the engineer should have purposely and maliciously done this injury to the plaintiff's property. It is not even suggested that he knew whose horses they were, and the circumstance disclosed by the plaintiff's evidence, that the train followed the horses a considerable distance and only a few rods behind them, and they having an opportunity to escape from the tracks all this time, would indicate that he had no purpose to injure them, for if such had been his intention it is most likely that he would have increased the speed of the train and omitted to sound the whistle. The evidence was not sufficient to sustain the conclusion reached by the jury that the engineer acted wantonly and maliciously, and the question should not have been submitted to their consideration. The most that can be said in criticising his

action is that his conduct was heedless and morally wrong. (*Nicholson* v. *Erie Railway*, 41 N. Y., 525.) The precise question has been passed upon in the courts of other States, and the same conclusions were reached on a state of facts similar to those before us.

In *Maynard* v. *Boston and Maine Railroad Company* (115 Mass., 458) the plaintiff's horse while trespassing on the defendant's tracks was killed by a passing train, and the court held that the company was not liable for anything short of reckless and wanton misconduct of those in charge of the train.

In *Darling* v. *Boston and Albany Railroad Company* (121 Mass., 118) a similar case was presented, and the court in its opinion said : " The jury should have been instructed to render a verdict for the defendant. * * * The evidence, viewed as favorably as possible for the plaintiff, merely showed that the train was moving at a usual and proper rate of speed, and that the engineer did not stop or slacken the train in order to avoid or give way to an animal which was unlawfully on the railroad. That he was not bound to do." (See, also, the following cases bearing directly on the question : *McCandless* v. *C. and N. W. R. R. Co.*, 45 Wis., 365 ; *Price* v. *New Jersey R. and T. Co.*, 31 N. J. L., 230 ; *Indianapolis P. and C. R. W. Co.* v. *Caudle*, 60 Ind., 112.)

The observance by the court of well established principles of law applicable to the rights of the parties in this case requires the judgment to be reversed as unsupported by the evidence.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.