prepared to hold that it was the duty of the defendant, towards persons crossing its track, to use every possible contrivance that human ingenuity might devise for the purpose of suppressing noises caused by the escape of steam or from the movement of trains. We have been referred to no case which goes to this extent, nor do we think that such a contention can be supported on any sound principles."

But, even if there were any doubt concerning this branch of the case, we are convinced that the plaintiff must fail in her action by reason of the fact that contributory negligence upon the part of her intestate was established beyond all question. She testified that both she and her husband were familiar with this crossing; that they had been over it frequently; that they had seen steam engines and cars on a great many occasions, and knew that all steam engines were liable to eject steam at times, when standing or moving. She also testified that the engine was in plain sight as they approached the crossing, and it necessarily follows that in attempting to make the crossing in the manner they did they knew they were encountering a peril which was liable to produce just the result which followed. It would be difficult, we think, to conceive of a case where the doctrine of assumed risk could be more appropriately applied than in the present action. And that both the plaintiff and her husband were conscious of the risk which they were assuming appears from the repeated declarations made by the former at the time of the accident, which, although subsequently denied by her, are established by evidence which is absolutely conclusive in its character.

The judgment and order appealed from should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(41 App. Div. 93.)

### CITY OF NIAGARA FALLS v. NEW YORK CENT. & H. R. R. CO.

### McINTYRE v. SAME.

(Supreme Court, Appellate Division, Fourth Department. June 6, 1899.)

1. **EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—RIGHTS ACQUIRED—FILING MAP.**

    Where a railroad company by condemnation proceedings acquires title to a portion of a tract of land, the fact that the owner, after institution of the proceedings, and before rendition of the order confirming the commissioner's award, makes and files a map designating such portion, or a part thereof, as a public street, will not affect the railroad company's title or rights.

2. **SAME—PAYMENT OF COMPENSATION—EVIDENCE.**

    A railroad company filed a petition to condemn land, and commissioners were appointed, who filed their report, which was not confirmed until over five years thereafter. There was no direct evidence that the payment or deposit of the compensation awarded was made as required by the order of confirmation, but shortly before institution of the proceedings the owner of the land (a college) authorized its agent to negotiate with the company for a right of way and entry into possession. Shortly thereafter the owner made and filed a map which designated the land taken as railroad property, and located the company's tracks thereon, and two years before the order of confirmation the owner made another similar map. The com-

pany took possession, but only ran a train once or twice over the land, and became defunct about the time the order of confirmation was rendered. About a month afterwards the owner deeded part of his land, including that taken, and subsequent conveyances were also made of such land. *Held*, that the presumption arising from possession of the company, that the award was paid, was rebutted, and it did not take title.

3. EASEMENTS—RIGHT OF WAY—STREETS—ABUTTING OWNERS.
    An owner of land, having made and filed a map which designated a certain strip as a public street, deeded a tract, bounding it by the center line of the street; the grantee having knowledge of the location of the street. Subsequent deeds of such tract similarly described it. For 22 years, and until a railroad company acquired title to the tract, the portion designated as a street was used as a common. The company erected a fence on the center line. Before and after such erection the original owner deeded other lots abutting on the street, by which they were bounded; the deeds referring to the map as part of the description. *Held*, that the company acquired a fee in half of the street subject to the easement of a public street in favor of those to whom lots bounded thereby had been conveyed.

4. DEDICATION—TIME OF ACCEPTANCE BY CITY.
    Where an owner of land in a city, who has made and filed a map designating a portion thereof as a public street, conveys to different persons lots bounding on such street, and he and his grantees never revoke the dedication, the city may accept the same at any time; and, when it does so accept it, the dedication becomes complete, and the street becomes a public highway for all purposes.

Appeal from judgment on report of referee.

Actions by the city of Niagara Falls and Patrick McIntyre against the New York Central & Hudson River Railroad Company. From judgments in each action for plaintiff, defendant appeals. Affirmed.

The action in which the city of Niagara Falls is plaintiff was commenced on the 31st day of December, 1898, for the purpose of restraining the defendant from maintaining or operating a railroad on the westerly half of a strip of land 66 feet wide, called "Ninth Street," or "Railroad Avenue," north of Center street, in the city of Niagara Falls, and from placing its tracks or any obstruction whatsoever thereon, to compel the defendant to remove any obstruction which it had placed thereon, and to procure a determination that said strip of land is a public highway. The complaint in the action in which Patrick McIntyre is plaintiff demands substantially the same relief, and in addition that it be adjudged that said plaintiff has an easement in the so-called street for the purpose of ingress and egress to his premises, which abut thereon. Damages in the sum of $250 are also demanded for injuries which the plaintiff McIntyre claims to have sustained by reason of the occupation of the premises by the defendant. The two actions were tried together. The facts applicable to each are the same, and are substantially undisputed. The city of Niagara Falls insists that the strip of land in question is a public highway, because the common grantor of the defendant and of the other abutting owners dedicated it as such, and the city duly accepted it, before the commencement of this action. The contention of the plaintiff McIntyre is that, whether the locus in quo is a public street or not, he, as the owner of an abutting lot, has an easement therein, because, as he alleges, it had been dedicated as a public street by his grantor when he purchased his lot, and also when the grantor of the defendant acquired title to its lands abutting thereon.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Charles A. Pooley, for appellant.
Morris Cohn, Jr., for respondents.

McLENNAN, J.  In the year 1850 Samuel De Veaux was the owner of a large tract of land situate at Niagara Falls, which included the strip of land called "Railroad Avenue" which is in dispute in this action.  In June, 1852, Samuel De Veaux died, leaving a last will and testament, whereby, among other things, he gave the entire tract of land to De Veaux College for Orphans and Destitute Children.  On the 14th day of June, 1853, the Niagara Falls & Lake Ontario Railroad Company, a railroad corporation duly organized and existing under the laws of this state (Act April 2, 1850), instituted proceedings to condemn certain of the lands owned by De Veaux College for the purposes of its railroad.  The land so sought to be condemned comprised about 28 acres, as appears by the petition.  In such petition the lands are described by metes and bounds, and are bounded on the east by the center line of what is now known and called "Railroad Avenue," which extends north and south for a considerable distance through the city of Niagara Falls, and crosses Grove avenue, Center avenue, Garden avenue, etc.  The petition was duly presented at a special term of the supreme court on said 14th day of June, 1853; and, due proof of service having been made, an order was duly made appointing commissioners to ascertain and appraise the compensation which ought to be made to the owners and persons interested in the real property proposed to be taken by said railroad company.  Thereafter, and on or about August 15, 1853, the commissioners made their report; but no action was taken thereon by said railroad company until the 9th day of September, 1858, more than five years after the presentation of such petition, at which time the report of the commissioners was presented to the supreme court, and upon due notice a motion for the confirmation of such report was made on behalf of said railroad company.  An attorney representing the owners of the property appeared and assented thereto.  The report was in all things confirmed, and among other things the order of confirmation contained the following:

"Now, on reading the said petition, and the annexed affidavit of J. P. Gerand Foster, Esq., reciting said proceedings, and on the consent of the owners and tenants of said property, by Elijah Ford, their attorney, annexed, and on motion of said J. P. Gerand Foster, counsel for said company, it is hereby, this 9th day of September, 1858, ordered that said appraisal be, and the same is hereby, confirmed, and that the balance of the moneys thereby awarded or not yet paid be paid to Elijah Ford, Esq., or, if he declines to receive the same, be deposited in the Erie County Savings Bank to the credit of the owners of said premises, and that the right to said premises of the said company be, and the same is hereby, in all things confirmed."

Then follows a description of the premises, which is the same as that contained in the petition.

At the time of the presentation of the petition in the condemnation proceedings, Railroad avenue, so called, had not been dedicated as a public street by any act of the owners of the property, so as to affect the rights of the Niagara Falls & Lake Ontario Railroad Company; and, if said company acquired title by virtue of said proceedings, it acquired the absolute fee of the westerly half of the strip of land in question, and it was not burdened with an

easement of a public street.  There is no direct evidence tending to
show that the compensation awarded by the commissioners to the
owners of the property, viz. $11,800, or at least any amount which
remained unpaid at the time of the confirmation of the award, has
ever been paid or deposited by said railroad company, or by any
one for it or on its behalf, as required by the order of confirma-
tion.  The Niagara Falls & Lake Ontario Railroad Company, how-
ever, as early as 1853, and about the time the condemnation pro-
ceedings were instituted, entered into possession of at least a por-
tion of the premises, apparently with the consent of the owner.
A map was made by one Witmer, at the instance and upon the em-
ployment of De Veaux College, which was completed in 1853, and
was filed in the clerk's office of Niagara county in December, 1855.
Upon such map the property described in the petition in condemna-
tion proceedings is designated as railroad property, and the track
of the railroad is located on said lands.  Upon the map, however,
the strip of land in question is shown as a street 66 feet wide, and
is called "Railroad Avenue," and forms the boundary of the rail-
road lands upon the east.  It also shows the avenues above men-
tioned as crossing Railroad avenue and said railroad lands.  In
December, 1856, the trustees of De Veaux college caused another
map to be made by Peter Emslie, a civil engineer, upon which the
lands described in the condemnation proceedings are designated
as railroad property, and its tracks are located upon the same.
Upon this map Railroad avenue is also shown as a street, and as
bounding said property upon the east.  Such map, in so far as it
shows the locus in quo, is substantially a copy of the Witmer map.
The Emslie map, so-called, was caused to be filed in the clerk's
office of Niagara county by the trustees of De Veaux College in
1872.

If the Niagara Falls & Lake Ontario Railroad Company acquired
title, under the condemnation proceedings instituted by it, to the
property described therein, making or filing the Witmer or Emslie
maps, so-called, in no way affected such title or the rights of said
railroad company.  Making the Emslie map in 1856, two years be-
fore the final order of confirmation was made and entered, how-
ever, is important, as it clearly shows that at that time the trustees
of De Veaux College recognized the possession of the railroad com-
pany.  The presentation of a petition in due form, the appointment
of commissioners, their report, and its confirmation, all duly made,
do not transfer title to the property sought to be acquired by emi-
nent domain.  In addition, it must appear that the compensation
awarded was paid or deposited as required by the order of confir-
mation.  The title becomes vested in the person or corporation
seeking to acquire the same only upon payment of the award, or
upon depositing the same as directed by the order of confirmation.
Rand. Em. Dom. § 289, and cases cited.  It, however, is well set-
tled that if a railroad corporation enters into possession of prem-
ises condemned, with the consent of the owner, and continues in
possession for a series of years, the presumption arises that the
compensation has been paid, and unless such presumption is re-

butted the title will be deemed to have vested. Terry v. Railroad Co., 22 Barb. 574.

The evidence in this case shows that at the time of the commencement of the condemnation proceedings, or very soon thereafter, the railroad company was permitted by the owners to enter into possession. In fact, on the 14th day of February, 1853, the trustees of De Veaux College, by resolution, authorized their agent to arrange with the railroad company for a right of way across their property, to the end that the railroad company might enter into possession; and, as before said, the railroad company, and its tracks upon the same, are shown upon both the Witmer and Emslie maps. From these facts, if standing alone, the presumption would arise that the award had been paid or deposited as required by the order of confirmation, and the Niagara Falls & Lake Ontario Railroad Company had become vested with the title to the property described in the condemnation proceedings. Such presumption, however, may be rebutted. In this case it appears that on October 28, 1858, within a month or a little more after the order of confirmation had been entered, the trustees of De Veaux College assumed to sell a portion of the premises described in the condemnation proceedings, and which included the strip of land in question, to one Robert B. Potter. The conveyance was to Potter individually, and, so far as appears, his purchase was in no way connected with the Niagara Falls & Lake Ontario Railroad Company. The consideration expressed was $6,538, and in the deed to him the easterly boundary of the premises is described as being the center line of Railroad avenue, which is the strip in dispute. Potter gave a mortgage back to De Veaux College for the sum of $4,000, as a part of the purchase price. The mortgage contained the same description as the deed. The mortgage was not paid when due, and an action of foreclosure was instituted, which resulted in a sale of the premises by the sheriff of Niagara county on January 5, 1874. Upon such sale one Clarkson N. Potter purchased the premises, and received a deed from the sheriff, in which the property was described precisely the same as in the deed received by Robert B. Potter, and in the mortgage given back by him. The premises thus acquired under the sheriff's deed were subsequently conveyed by Clarkson N. Potter and wife to Theodore Irwin, by deed dated February 17, 1876; and Irwin and wife conveyed to the Niagara Falls Branch Railroad Company by deed dated November 16, 1880, which corporation was organized about that time. That corporation leased all its property, rights, and franchises to the Rome, Watertown & Ogdensburg Railroad Company in September, 1891, and said last-mentioned company leased all its property to the defendant before the commencement of this action. The deed of October 28, 1858, from De Veaux College to Robert B. Potter, has at all times been recognized by the defendant and its grantors as a valid conveyance of the premises therein described. After the execution and delivery of such deed the Niagara Falls & Lake Ontario Railroad Company did not exercise any acts of ownership over the property conveyed to Potter, or to any of the property de-

scribed in the condemnation proceedings. In fact, that portion of the premises described in the condemnation proceedings, and not included in the Potter deed, has never been claimed by any one on behalf of the Niagara Falls & Lake Ontario Railroad Company, or on behalf of the defendant. It is apparent that the Niagara Falls & Lake Ontario Railroad Company, before or about the time the order of confirmation in the condemnation proceedings was made, had become defunct, and had ceased to exercise any corporate functions. In fact, it appears that it never operated its railroad upon the premises in question, except to run a train once or twice over the same. Under these circumstances, we think the presumption that the award has been paid is successfully rebutted, and that, therefore, the title to the premises described in the condemnation proceedings did not vest in the Niagara Falls & Lake Ontario Railroad Company. But if it be assumed that the title did vest, and that the railroad company acquired a perfect title to the strip of land in question, we fail to see how the defendant can avail itself of such title. There is no evidence in the record before us which tends to show that the Niagara Falls & Lake Ontario Railroad Company has at any time conveyed any title or interest which it may have had to or in the premises in question to the defendant or to its predecessors, either by deed, assignment, or otherwise, or that such title or interest has been acquired by operation of law. The learned referee finds or states:

"A blanket mortgage is shown, executed and recorded in May, 1853, upon all the property of said railroad, of every nature, but without detailed description. This mortgage is prior, by five years, in date and in record, to the order confirming the appraisal proceedings, but the terms of it are such as to cover after-acquired property."

The referee then states that said mortgage was foreclosed, and that under such foreclosure the property was sold to Robert B. Potter, who received a referee's deed conveying to him the mortgaged premises; that Potter conveyed to Theodore Irwin, who in turn conveyed to the Niagara Falls Branch Railroad Company; that such company leased all its property to the Rome, Watertown & Ogdensburg Railroad Company; and that such last-mentioned company leased all its property to the defendant. We have examined the record in vain to find the statement of any witness or the contents of any exhibit which supports the suggestion of the referee. The only deed from Irwin to the Niagara Falls Branch Railroad Company to which our attention has been called is the deed dated November 16, 1880, and recorded May 31, 1895. By that deed Irwin conveys "the lands, premises, property, rights, and privileges," etc., conveyed to him by Robert B. Potter and wife by deed bearing date the 16th day of February, 1876, and recorded the same day, and also the premises conveyed to him by Clarkson N. Potter and wife by deed dated February 17, 1876, and recorded February 23, 1876, which is the deed before referred to. Independent of the recitals in the Irwin deed, there is nothing in the record before us to indicate that Robert B. Potter ever acquired any title or interest to or in the property in question, except such as he ac-

quired under the deed executed and delivered to him by De Veaux College, which bears date October 28, 1858. But having reached the conclusion that the defendant failed to prove that the award of the commissioners in condemnation has ever been paid or deposited as required by the order of confirmation, and that for that reason the Niagara Falls & Lake Ontario Railroad Company did not acquire any title, by virtue of such proceedings, to the premises described therein, or to the strip of land in question, it is unnecessary to inquire what other rights or interests belonging to such company the defendant or its grantors may have acquired, or by what conveyances or methods such other rights, if any, were secured by the defendant.

The rights of the defendant in these actions must depend upon the deed from De Veaux College to Robert B. Potter, dated the 28th day of October, 1858, and the mesne conveyances to the defendant. In the deed to Potter the tract of land conveyed was bounded upon the east by a line in the center of a public street, known as "Railroad Avenue," 66 feet wide. It is unnecessary to cite authorities in support of the proposition that under that deed the grantee took the fee to the center of such street, but burdened with the easement of a public highway. At the time of such conveyance to Robert B. Potter a map had been made, and within two years thereafter had been filed, distinctly locating Railroad avenue as it now is, and described in the Potter deed. It clearly appears that Robert B. Potter, the grantee in said deed, fully understood and knew of the location of Railroad avenue, because upon the same day when the deed was received by him he gave a purchase-money mortgage back to the grantor, which contained the same description as that contained in the deed to him. Then follows the mortgage foreclosure, the sheriff's deed to Clarkson N. Potter, and the conveyance from Clarkson N. Potter and wife to Theodore Irwin, and from him to the Niagara Falls Branch Railroad Company. The Niagara Falls Branch Railroad Company then leased all its property to the Rome, Watertown & Ogdensburg Railroad Company, and such last-mentioned company leased all its property to the defendant in these actions. From the time of the execution and delivery of the quitclaim deed by De Veaux College to Robert B. Potter until about the year 1880, the premises described in such deed were not used for railroad purposes, but were a common,— especially the eastern portion of the same, and where Railroad avenue is located. About the year 1880, and after the lease by the Niagara Falls Branch Railroad Company to the Rome, Watertown & Ogdensburg Railroad Company, such last-named company sought to occupy the westerly half of Railroad avenue, north of Center avenue, and it erected a fence on the center line of said avenue. The fence remained for four or five years, when it was removed or gradually went into decay. About the year 1876 De Veaux College began to convey lots owned by it abutting upon Railroad avenue, north of Center avenue, according to the Emslie map; and it appears that the plaintiff McIntyre, among others, purchased a lot abutting upon such street. Such map was referred to as a part

58 N.Y.S.—40

of the description in each of such conveyances. The plaintiff and the other purchasers of lots erected dwelling houses on their respective lots, and used the strip of land designated on the Emslie. map as "Railroad Avenue," or at least the easterly half of such strip, as a means of ingress and egress to their premises. It is true that when the plaintiff McIntyre purchased his lot the lessor of the defendant railroad company had erected and was maintaining the fence above referred to upon the center line of Railroad avenue, north of Center avenue. In the spring of 1895 the defendant assumed to take possession of the westerly half of Railroad avenue, north of Center avenue, to lay its tracks thereon, and to occupy it for the purposes of its railroad, to the exclusion of the plaintiff McIntyre and of the public. It is not claimed that the defendant has acquired any right or title in or to the westerly half of the strip of land in question by adverse user; and so its entire right to occupy said street, and its title thereto, must depend upon the Potter deed and the several mesne conveyances above referred to. Although by such conveyances the defendant acquired the fee to the westerly half of Railroad avenue, under the circumstances we think such fee is burdened with the easement of a public street or right of way in favor of the plaintiff McIntyre and the other grantees of De Veaux College. Smyles v. Hastings, 22 N. Y. 217; Cox v. James, 45 N. Y. 558; Wiggins v. McCleary, 49 N. Y. 346.

In the case of Bissell v. Railroad Co., 23 N. Y. 61, the court says:

"The grantor, Mumford, intended this as a street, and gave it the name of 'Erie Street'; and, as regards his grantees in these deeds, he dedicated it as a street, according to all the cases, whether the public ever accepted it as such or not. It was, as between him and his grantees, a street, which they had a right to use as soon as these conveyances were made by him. * * * As between them [his grantees] and him, his conveyances, per se, dedicated it to their use as a street."

De Veaux College, having conveyed a lot to the plaintiff McIntyre according to the Emslie map, and bounding the westerly side of said lot by Railroad avenue, created in the plaintiff an easement in said avenue which it (De Veaux College) could not withdraw, and such easement became a property right in favor of McIntyre. Wiggins v. McCleary, supra; Lord v. Atkins, 138 N. Y. 184, 33 N. E. 1035. The defendant and the plaintiff McIntyre, being in privity of title with De Veaux College, are estopped by the recitals in their respective conveyances from successfully urging, as against each other, that an easement common to both was not created in the strip of land called "Railroad Avenue" for its entire width of 66 feet. Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. 330; Village of Olean v. Steyner, 135 N. Y. 341, 32 N. E. 9. In the case last cited the municipality instituted proceedings to acquire land for the purposes of a street. It appeared that the landowners had acquired title under deeds which recognized as a street the lands sought to be acquired, as laid out by a map made by a former owner, who sold and conveyed by descriptions referring to said map, and that said owner had conveyed lots to different parties by descriptions referring to that map, and bounding the

lots by the street as laid out on the map; and it was held that the grantee of the original owner and the subsequent grantees in turn acquired an easement in the strip designated as a street, and that, all the parties having recognized the map and bought and sold with reference to it, they had the right to have the strip kept open to its full width after the manner and with the characteristics of a street. In the case at bar the defendant's grantor, Robert B. Potter, and all the other grantees of De Veaux College, recognized Railroad avenue, and took their respective conveyances with reference to it. There is no evidence tending to show that the plaintiff McIntyre, or any of the other grantees of De Veaux College, abandoned the easement to which they became entitled by virtue of their respective deeds. The easement in Railroad avenue accruing against the common grantor gave similar rights to all the grantees, and such grantees, as between themselves, could extinguish the servitude only by the united act of all. Village of Olean v. Steyner, supra. De Veaux College having dedicated the strip of land known as "Railroad Avenue" as a public street, and having conveyed to the defendant's grantor the premises in question, bounded on the east by said street, and De Veaux College having from time to time conveyed to other grantees, including the plaintiff McIntyre, lots also bounded by such street, and said common grantor having in no manner revoked such dedication, the plaintiff the city of Niagara Falls was at liberty at any time to accept such strip of land as a public street. Bridges v. Wyckoff, 67 N. Y. 130. The city of Niagara Falls, by resolution of its common council, formally accepted said strip of land as a public street in 1895. This was done, so far as appears, with the consent of the common grantor, De Veaux College, and with the consent and acquiescence of all the grantees of De Veaux College, except the defendant. De Veaux College, the common grantor, and its several grantees, not having united in withdrawing or revoking the original dedication of the strip of land in question, known as "Railroad Avenue," as a public street, the city of Niagara Falls was at liberty at any time to formally accept the same, and its action in that regard was sufficient for that purpose; and by such action the original dedication became complete, and Railroad avenue a public highway.

The rule contended for by the learned counsel for the defendant, that if it be assumed that De Veaux College dedicated the strip of land in question as a public street in 1858, it not having been accepted by the public authorities for a period of more than six years, such dedication ceased to have any force or effect, is not applicable to this case. The rule contended for only applies where no intervening rights are involved. It undoubtedly is true that if the defendant or its grantor was the only grantee of De Veaux College of lands abutting on Railroad avenue, and the plaintiff the city of Niagara Falls had taken no other action than it is shown to have taken by the evidence in this case prior to 1895, it not having formally accepted the strip of land as a public street or worked or improved it as such, De Veaux College would have been at liberty, with the consent of its grantee, the defendant, to have revoked such dedication; but having conveyed lots bounded by such street to the plaintiff

and other grantees, who insist upon the easement declared in their respective conveyances, the common grantor is estopped from revoking such dedication, and the municipality was at liberty at any time to accept the same, not only in the interest of such grantees, but also in the interest of the public. We think the cases cited by the learned counsel for the defendant in no way conflict with the proposition above stated. In the case of Bridge Co. v. Bachman, 66 N. Y. 261, the grantor had specifically reserved the right, on the map filed, to revoke the dedication as a street of the disputed territory; and it was held, no intervening rights having accrued, that he had a right to revoke such dedication. In the Speir Case, 121 N. Y. 420, 24 N. E. 692, it appeared that no dedication of the strip of land as a public street had been made, but that the dedication of the easement was that of a private way; and it was held that user for 20 years by the public not having been shown, and no actual or implied acceptance by the town having been shown, the strip of land was not a public highway, but private property, and so assessable to the owners. In People v. Underhill, 144 N. Y. 316, 39 N. E. 333, it appeared that there had never been an actual user of the alleged street, and no acceptance by the municipal authorities; and it was held that under the circumstances of that case the evidence failed to establish a public highway. So, in the case of Palmer v. Palmer, 150 N. Y. 148, 44 N. E. 966, the locus in quo was not dedicated as a public highway, and had never been used or accepted as such. The grantor simply created a private easement for the benefit of his grantee.

The conclusion is reached that the plaintiff McIntyre, under and by virtue of his deed from the trustees of De Veaux College, became entitled to have Railroad avenue, as shown by the Emslie map, north of Center avenue, kept open as a right of way to and from his premises, and that the defendant, as against him, is not entitled in any way to destroy, impair, or interfere with such right of way; also, that the common grantor of the defendant, of the plaintiff McIntyre, and of all the other grantees of premises bounded by Railroad avenue, having dedicated such avenue as a public street, and not having revoked such dedication, the plaintiff the city of Niagara Falls was at liberty at any time to accept such avenue as a public street, and that by its acceptance in 1895 the dedication became complete, and the strip of land in question a public highway for all purposes. It follows that the judgment in each of the above-entitled cases should be affirmed, with costs. All concur.

Judgment in each of the above-entitled cases affirmed, with costs.